# IN THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

STATE OF OKLAHOMA,

*Defendant-Appellee*,

v.

OKLAHOMA STUDENTS FOR AFFORDABLE TUITION,

*Movant-Appellant*.

On Appeal from the United States District Court for the Eastern District of Oklahoma, No. 6:25-cv-00265, Hon. Ronald A. White

## MOVANT-APPELLANT OKLAHOMA STUDENTS FOR AFFORDABLE TUITION'S OPENING BRIEF

Thomas A. Saenz
Fernando Nuñez
Luis L. Lozada
**MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND**
634 South Spring Street, Floor 11
Los Angeles, CA 90014
(213) 629-2512

*Counsel for Movant–Appellant*
*Oklahoma Students for Affordable Tuition*

**Oral Argument Requested**

**TABLE OF CONTENTS**

Page(s)

STATEMENT OF PRIOR RELATED APPEALS…………………………………1

JURISDICTIONAL STATEMENT……………………………………………..1

STATEMENT OF ISSUES PRESENTED FOR REVIEW………………………..2

STANDARD OF REVIEW………………………………………………...3

STATEMENT OF THE CASE…………………………………………………...3

SUMMARY OF THE ARGUMENT…………………………………………..8

ARGUMENT………………………………………………………...10

I.      The District Court's Entry of Judgment is Erroneous……………………10

        A. The District Court Violated the First Amendment and Due Process by Failing to Hold a Public Hearing Concerning the Rights and Entitlements of Numerous Persons……………………………………………11

        B. The Challenged Provisions Comply with Federal Law…………………16

            1.  The Plain Language of Section 1623(a) Only Prohibits Benefits Based *Solely* on Residence…………………………………………18

            2.  The Canon of *Expressio Unius* Confirms that Section 1623(a) Does Not Preclude Benefits Here…………………………………………20

            3.  General Principles of Severability Further Confirm that Congress Did Not Intend to Preclude State Laws that Confer Benefits Based on More Than Just Residence…………………………………………22

            4.  The District Court's Construction is Unsupported by the Complaint's Own Allegations…………………………………………..25

        C. Section 1623(a) Violates the Tenth Amendment………………………..25

            1.  The Federal Government Cannot Tell the State How to Legislate…...27

            2.  Section 1623(a) Improperly Intrudes on State Power Over Education

by Requiring Oklahoma to Expand Education Benefits to All U.S. Citizens…………………………………………………………31

3. Section 1623(a) Undermines Political Accountability and Structural Safeguards of Federalism……………………………………………33

D. The District Court Failed to Consider Whether the Challenged Provisions Are Severable and Remain Operable………………………………35

CONCLUSION……………………………………………………………...38

STATEMENT REGARDING ORAL STATEMENT……………………….38

CERTIFICATE OF COMPLIANCE……………………………………...39

CERTIFICATE OF SERVICE……………………………………………40

ADDENDUM…………………………………………………………..41

# TABLE OF AUTHORITIES

**Cases**      Page(s)

*Arizona v. United States*,
   567 U.S. 387 (2012) ...................................................................... 27, 28

*Astoria Fed. Sav. & Loan Ass'n v. Solimino*,
   501 U.S. 104 (1991) ............................................................................ 18

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011) ............................................................................ 14

*Ayotte v. Planned Parenthood of N. New England*,
   546 U.S. 320 (2006) ...................................................................... 35, 38

*BedRoc Ltd. v. United States*,
   541 U.S. 176 (2004) ............................................................................ 19

*Bill Johnson's Rests., Inc. v. N.L.R.B.*,
   461 U.S. 731 (1983) ............................................................................ 11

*Bond v. United States*,
   564 U.S. 211 (2011) ............................................................................ 26

*Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan.*,
   347 U.S. 483 (1954) ............................................................................ 32

*Conaghan v. Riverfield Cnty. Day Sch.*,
   163 P.3d 557 (Okla. 2007) .................................................................. 23

*Corr. Prof. Ass'n, Inc. v. Jackson*,
   280 P.3d 959 (Okla. 2012) .................................................................. 23

*Cruz v. Beto*,
   405 U.S. 319 (1972) ............................................................................ 11

*Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab. v. Perini N. River
   Assocs.*,
   459 U.S. 297 (1983) ............................................................................ 17

*Fuentes v. Shevin*,
   407 U.S. 67 (1972) .............................................................................. 13

*Garley v. Sandia Corp.*,
   236 F.3d 1200 (10th Cir. 2001) ............................................................ 3

*Goldberg v. Kelly*,
   397 U.S. 254 (1970) ...................................................................... 12, 13

*Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*,
   245 F.3d 1172 (10th Cir. 2001) .......................................................... 14

*Gregory v. Ashcroft*,
   501 U.S. 452 (1991) ............................................................................ 27

*Halverson v. Slater*,
   129 F.3d 180 (D.C. Cir. 1997) ............................................................ 20

*Hasberry v. Lee*,
  311 U.S. 32 (1940) .......................................................................... 13

*Hatch v. Goerke*,
  502 F.2d 1189 (10th Cir. 1974) ..................................................... 14

*Heckman v. Live Nat. Enter., Inc.*,
  120 F.4th 670 (9th Cir. 2024) ................................................... 13, 14

*Jevne v. Super. Ct.*,
  111 P.3d 954 (Cal. 2005) .............................................................. 23

*Lemon v. Labette Comm. Coll.*,
  6 F. Supp. 3d 1246 (D. Kan. 2014) ............................................... 14

*Liddell v. Heavner*,
  180 P.3d 1191 (Okla. 2008) .......................................................... 23

*Martinez v. Regents of Univ. of Cal.*,
  50 Cal. 4th 1277 (2010) .......................................................... 18, 21

*Milliken v. Bradley*,
  418 U.S. 717 (1974) ...................................................................... 32

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
  526 U.S. 172 (1999) ...................................................................... 23

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ...................................................................... 12

*Murphy v. Nat'l Collegiate Athletic Ass'n*,
  584 U.S. 453 (2018) ......................................................... 27, 28, 29

*N.L.R.B. v. Bell Aerospace Co. Div. of Textron*,
  416 U.S. 267 (1974) ...................................................................... 17

*New York v. United States*,
  505 U.S. 144 (1992) ......................................................... 26, 31, 34

*Panhandle E. Pipeline Co. v. Oklahoma ex rel. Comm'rs of Land Office*,
  83 F.3d 1219 (10th Cir. 1996) ......................................................... 3

*Plyler v. Doe*,
  457 U.S. 202 (1982) ...................................................................... 32

*Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*,
  464 U.S. 501 (1984) ...................................................................... 15

*Printz v. United States*,
  521 U.S. 898 (1997) ......................................................... 27, 29, 34

*Regan v. Time, Inc.*,
  468 U.S. 641 (1984) ...................................................................... 23

*Richmond Newspapers, Inc. v. Virginia*,
  448 U.S. 555 (1980) ...................................................................... 15

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
  411 U.S. 1 (1973) .......................................................................... 32

*Nat'l Fed. of Indep. Bus. v. Sebelius*,
 567 U.S. 519 (2012)..................................................29, 31
*State v. Abrams*,
 178 P.3d 1021 (Wash. 2008) ...........................................23
*TRW, Inc. v. Andrews*,
 534 U.S. 19 (2001) ........................................................16
*United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n.*,
 389 U.S. 217 (1967) .......................................................11
*United States v. Johnson*,
 941 F.2d 1102 (10th Cir. 1991) ........................................3
*United States v. Jones*,
 160 F.3d 641 (10th Cir. 1998) ..........................................3
*United States v. Vonn*,
 535 U.S. 55 (2002) ........................................................21
*Wilson v. Fallin*,
 262 P.3d 741 (Okla. 2011)..............................................36
*Wisconsin v. Yoder*,
 406 U.S. 205 (1972) ......................................................32
*Zadvydas v. Davis*,
 533 U.S. 678 (2001) ......................................................25

Statutes

8 U.S.C. § 1621(d) .......................................................5, 16
8 U.S.C. § 1623(a) ........................................................2–38
28 U.S.C. § 1291 ............................................................. 1
28 U.S.C. § 1331 ............................................................. 1
75 Okla. Stat. 2011 § 11a(1) ...........................................36
Okla. Stat. Title 70, § 3242 .............................................3–37
Okla. Stat. Title 70, § 3242(A)(1) ....................................37
Okla. Stat. Title 70, § 3242(A)(1)–(2) ..............................36
Okla. Stat. Title 70, § 3242(A)(2) ....................................37
Okla. Stat. Title 70, § 3242(B)(2)(a)–(c) ............................ 4
Okla. Stat., Title 70, § 3242(A)....................................3, 37
Okla. Stat., Title 70, § 3242(A)–(B) .................................20
U.S. Const. amend. I ......................................................11
U.S. Const. amend. X.....................................................26

## Rules

Fed. R. App. P. 4(a)(1)(B) .................................................................. 1
Fed. R. App. P. 12.1.................................................................... 2, 7
Fed. R. App. P. 32(a)(5) ............................................................. 39
Fed. R. App. P. 32(a)(6) ............................................................. 39
Fed. R. App. P. 32(a)(7)(B) ....................................................... 39
Fed. R. App. P. 32(f)................................................................... 39
Fed. R. Civ. P. 62.1 ................................................................... 2, 7
Fed. R. Civ. P. 72(b)(2) ............................................................. 12

## Other Authorities

Senate Bill 596 ......................................................................... 3

**STATEMENT OF PRIOR RELATED APPEALS**

There are no prior related appeals.

**JURISDICTIONAL STATEMENT**

The district court exercised federal-question jurisdiction under 28 U.S.C. § 1331. The district court entered an order and final consent judgment on August 29, 2025. *See* App. Vol. 1 at 31. That order is appealable under 28 U.S.C. § 1291. On October 27, 2025, Oklahoma Students for Affordable Tuition ("OSAT") filed a motion to intervene for purposes of appeal. *See* App. Vol. 1 at 32. On October 28, 2025, OSAT filed a timely protective notice of appeal from the district court's final consent judgment under Federal Rule of Appellate Procedure 4(a)(1)(B). *See* App. Vol. 1 at 51.[1] The protective notice of appeal aimed to preserve OSAT's right to pursue an appeal once it was granted party status by the district court.

OSAT's motion to intervene was fully briefed—and has been pending with the district court—since December 15, 2025. *See* App. Vol. 1 at 96. After this Court docketed OSAT's appeal, Oklahoma moved to dismiss the appeal for lack of jurisdiction. *See* Dkt. 11. OSAT opposed that motion. *See* Dkt. 21. On December 9, 2025, this Court referred the motion to dismiss to the merits panel and lifted the stay of the briefing schedule. *See* Dkt. 25. OSAT has sought two extensions with

---

[1] The deadline to file an appeal was October 28, 2025, which was 60 days after the final consent judgment. *See* App. Vol. 1 at 31.

this Court to give the district court additional time to rule on its motion to intervene before OSAT filed its opening brief. *See* Dkts. 27, 29. This Court granted the extensions but indicated that no further extensions will be granted on the basis that the district court has not ruled on the motion to intervene. *See* Dkt. 31 at 2. In doing so, this Court referenced the indicative-ruling procedure set forth in Federal Rule of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 12.1. *See id.*

On February 23, 2026, OSAT filed an opposed motion for indicative ruling in the district court. *See* App. Vol. 1 at 109. The district court has yet to rule on that motion as of the date of this filing. On March 5, 2026, OSAT filed a motion to intervene with this Court. *See* Dkt. 32. That motion is pending as of the date of this brief. Accordingly, once OSAT is granted intervenor status, either by this Court or the district court, OSAT will be a proper party to this appeal.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

Whether the district court committed reversible error when it: (1) entered judgment without a hearing or providing affected third parties an opportunity to be heard; (2) concluded that the challenged state-law provisions violate 8 U.S.C. § 1623(a); (3) failed to consider the Tenth Amendment implications of determining that the challenged provisions are prohibited by 8 U.S.C. § 1623(a); and/or (4) failed to consider whether the residency provision of the challenged provisions should be severed.

## STANDARD OF REVIEW

Whether state law is preempted by federal law is a conclusion of law which is reviewed *de novo*. *See Garley v. Sandia Corp.*, 236 F.3d 1200, 1206–07 (10th Cir. 2001) (citing *Panhandle E. Pipeline Co. v. Oklahoma ex rel. Comm'rs of Land Office*, 83 F.3d 1219, 1225 (10th Cir. 1996)). Similarly, severability and due process are both questions of law that this Court reviews *de novo*. *See, e.g., United States v. Jones*, 160 F.3d 641, 645 (10th Cir. 1998); *United States v. Johnson*, 941 F.2d 1102, 1111 (10th Cir. 1991).

## STATEMENT OF THE CASE

In 2003, Oklahoma enacted Senate Bill 596, which amended Oklahoma Statutes, Title 70. As relevant here, Okla. Stat., Title 70, § 3242(A) now provides that the Oklahoma State Regents for Higher Education ("OSRHE") "may adopt" a policy that allows students to be eligible for regular tuition if they (1) graduated from a high school in the state, and (2) resided in the state with a parent or legal guardian while attending an Oklahoma high school for at least two years prior to graduation.[2] The Oklahoma legislature also required students without lawful immigration status to "(a) provide to the institution a copy of a true and correct application or petition filed with the United States Citizenship and Immigration Services to legalize the

---

[2] In 2007, the Oklahoma legislature amended Okla. Stat. Title 70, § 3242 to make, among other things, the adoption of a policy optional.

student's immigration status, or (b) file an affidavit with the institution stating that the student will file an application to legalize his or her immigration status at the earliest opportunity the student is eligible to do so . . . ." Okla. Stat. Title 70, § 3242(B)(2)(a)–(c).

OSRHE adopted a policy that closely mirrored the state statute. Specifically, OSRHE policy stated that "an individual who cannot present to the institution valid documentation of United States nationality or an immigration status permitting study at a postsecondary institution" is eligible for regular tuition rates if they (1) "[g]raduated from a public or private Oklahoma high school," (2) "[r]esided in [Oklahoma] with a parent or legal guardian while attending classes at an Oklahoma public or private high school for at least two [] years prior to graduation," and (3) "[s]atisfies admission standards for the institution." OSRHE Policy § 3.18.6.[3] OSRHE policy also required an immigration application or affidavit that the student will file an application when eligible. *See id.*

---

[3] OSRHE changed this policy after the district court entered the final consent judgment. *See* Oklahoma State Regents for Higher Education, Agenda (Sept. 4, 2025), found at https://okhighered.org/wp-content/uploads/2025/09/2025-09-04-State-Regents-Meeting-Agenda-Online-Posting.pdf (last visited Feb. 27, 2026). The current OSRHE Policy § 3.18.6 refers to foreign service officers and members of the intelligence community. *See* Oklahoma State Regents for Higher Education, Chapter 3, Academic Affairs Policy, found at https://okhighered.org/wp-content/uploads/2025/09/Chapter-3-2025.pdf (last visited February 27, 2026). Thus, OSAT will refer to the former OSRHE Policy § 3.18.6 when referring to the challenged provisions in this brief.

Since their enactment, these laws have enabled students without lawful immigration status in Oklahoma to afford a higher education in the state. However, on August 5, 2025, the United States sued the State of Oklahoma to prevent those students from paying regular tuition rates. *See* App. Vol. 1 at 9–21. Specifically, the United States alleged that 8 U.S.C. § 1623(a) expressly preempts the challenged provisions—Title 70 § 3242 and OSRHE Policy § 3.18.6.[4] *See id.* Section 1623(a) is part of the 1996 Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), and, as it relates to this action, states the following:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

8 U.S.C. § 1623(a).

The same day the lawsuit was filed, instead of defending its own law, the State of Oklahoma joined the United States in filing a joint motion for entry of consent judgment. *See* App. Vol. 1 at 22–23. In doing so, they asked the district court to enter a final judgment declaring that the challenged provisions violate the Supremacy Clause of the Constitution, and to issue a permanent injunction

---

[4] The Complaint also alleges a violation of 8 U.S.C. § 1621(d), but only in a cursory manner, and it does not adequately explain the alleged violation and specific application to this case. *See generally* App. Vol. 1 at 9–21.

prohibiting the State of Oklahoma and its successors, agents, and employees from enforcing the challenged provisions. *See id.*

On August 7, 2025, two days after the lawsuit was filed, and without holding a hearing, the magistrate judge issued a Report and Recommendation in which he recommended that the district court grant the joint motion for entry of consent judgment. *See* App. Vol. 1 at 25–28. Specifically, the magistrate judge concluded that the challenged provisions were preempted by Section 1623(a). *See id.* at 27. The magistrate judge also provided only 3 days to file objections to his report and recommendation. *See id.* at 27–28. On August 29, 2025, the district court adopted the Report and Recommendation and entered an Order and Final Consent Judgment declaring the challenged provisions unlawful "as applied to aliens who are not lawfully present in the United States," and permanently enjoining the State of Oklahoma from enforcing the challenged provisions, "as applied to aliens who are not lawfully present in the United States." *See* App. Vol. 1 at 29–31.

Oklahoma Students for Affordable Tuition (hereinafter, "OSAT") is a group of students affected by Oklahoma's failure to defend its own laws. It is an unincorporated association comprised of college students without lawful immigration status who are united for the purpose of advocating for access to affordable higher education in Oklahoma, including maintaining the state's regular tuition rates for certain Oklahoma students without lawful immigration status. *See*

6

App. Vol. 1 at 38–39. In or around late September 2025, after the fall term had commenced, members of OSAT began to receive notices from their respective colleges informing them that their tuition rates were increasing because of the district court's final judgment. *See id.* at 44. OSAT subsequently acted diligently in protecting its members' interests by seeking intervention at the earliest practicable time. *See id.* On October 27, 2025, OSAT moved to intervene as a defendant for purposes of appeal. *See id.* at 32–33. On October 28, 2025, to preserve its right to appeal, OSAT filed a protective notice of appeal of the district court's August 29, 2025 order. *See id.* at 51. Briefing on OSAT's motion to intervene was completed on December 15, 2025. *See id.* at 96.

OSAT has sought two extensions with this Court to afford the district court sufficient time to rule on the motion to intervene before OSAT filed this brief. *See* Dkts. 27, 29. This Court granted the extensions but indicated that no further extensions will be granted on the basis that the district court has not ruled on the motion to intervene. *See* Dkt. 31 at 2. This Court referenced the indicative-ruling procedure set forth in Federal Rule of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 12.1 as a procedure OSAT might use. *See id.* On February 23, 2026, OSAT filed an opposed motion for indicative ruling in the district court. *See* App. Vol. 1 at 109. The district court has yet to rule on that motion. On March 5,

7

2026, OSAT filed a motion to intervene with this Court. *See* Dkt. 32. That motion is pending as of the date of this brief.

<h2 style="text-align:center">SUMMARY OF THE ARGUMENT</h2>

Members of OSAT have lived in Oklahoma for years, attending school, including high school, among their neighbors and friends in the state. Upon graduating high school, they made a choice, similar to that made by teenagers of all backgrounds, to continue their education in a college or university close to their families and others critical to their development as young adults and higher-education students. This choice was possible for the OSAT members because longstanding Oklahoma law allows them, despite the fact that they are not lawfully present immigrants, to pay the more affordable tuition rates available to all of their high school peers.

Then, in 2025, as OSAT members readied themselves to begin the fall semester of their degree programs, the federal government commenced a campaign to strike down state laws like Oklahoma's, asserting the unprecedented conclusion that such laws, many of them on the books for two decades, are obviously preempted by a 1996 federal law. The federal law was already on the books when Oklahoma and every other state with such a tuition-equity law enacted their policies.

Rather than defending duly-enacted state law, the state of Oklahoma joined with the federal government to file a consent decree enjoining the challenged law,

on the very day the complaint in this action was filed. Believing that their state would follow the ordinary legislative repeal process if it wished to change longstanding state law, OSAT members only became aware of the tuition law's invalidation when they began to receive notices from their schools that their tuition would rise exponentially as a result of this lawsuit.

Acting to protect their opportunity to obtain a higher education in Oklahoma, OSAT now seeks to be heard regarding the severe legal flaws in the consent decree that the district court approved. As explained below, the decree rests on faulty legislative construction of the federal law in question, and fails to account for the obligation of constitutional avoidance because the federal government's proffered interpretation would make clear that the federal law runs afoul of the Tenth Amendment. OSAT seeks remand to have these issues addressed in the adversarial process, which should lead to preservation of the regular tuition rates upon which they have relied.

The district court's final consent judgment is erroneous for multiple reasons. First, the challenged provisions comply with 8 U.S.C. § 1623(a). The federal statute only prohibits postsecondary benefits based *solely* on residence. Oklahoma, however, bases eligibility on a combination of factors, including high school graduation within the state, not just residence. A plain-language reading of the statute, as well as established principles of statutory construction, support this

interpretation. Second, a conflict between the challenged provisions and Section 1623(a) raises serious constitutional concerns about Section 1623(a) itself. Specifically, Section 1623(a)—which compels Oklahoma to change its educational policies with regard to non-immigrant students—is a violation of the Tenth Amendment and established principles of federalism. Finally, even if a portion of the challenged provisions is preempted, the district court erred by failing to consider severability before invalidating the entirety of the challenged provisions as applied to students without lawful immigration status.

For these reasons, the district court's declaration and permanent injunction should be reversed and the case should be remanded for further proceedings.

## ARGUMENT

### I. The District Court's Entry of Judgment is Erroneous

The district court committed several errors when it entered the final consent judgment. First, the district court's entry of judgment, without a hearing or an opportunity for affected third parties to be heard, violated due process rights. Second, the district court erred when it concluded that the challenged provisions violate Section 1623(a). Third, the district court erred because, having concluded that the challenged provisions were prohibited by Section 1623(a), it failed to consider the Tenth Amendment implications of Section 1623(a). Finally, the district

10

court erred when it failed to consider whether the residency section of the challenged provisions should be severed.  OSAT addresses each of these errors below.

### A. The District Court Violated the First Amendment and Due Process by Failing to Hold a Public Hearing Concerning the Rights and Entitlements of Numerous Persons

The district court violated the rights of OSAT members when it entered the consent judgment without holding a public hearing to allow affected third parties to present argument and seek relief from the harms that would be caused by the potential invalidation of the challenged provisions.

The First Amendment provides that "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The Supreme Court has recognized that the right to petition includes the right to access the courts to seek redress.  *See Bill Johnson's Rests., Inc. v. N.L.R.B.*, 461 U.S. 731, 741 (1983) ("[T]he right to access to the courts is an aspect of the First Amendment right to petition the Government for redress of grievances."); *Cruz v. Beto*, 405 U.S. 319, 321 (1972) ("[P]ersons . . . have the right to petition the Government for redress of grievances which, of course, includes access . . . to the courts for the purpose of presenting their complaints.") (internal quotation marks and citations omitted).  This right is "among the most precious of the liberties safeguarded by the Bill of Rights."  *United Mine Workers of Am., Dist.*

*12 v. Ill. State Bar Ass'n.*, 389 U.S. 217, 222 (1967).  It ensures that affected persons have the opportunity to be heard and to challenge decisions that affect their interests.

Here, the district court entered the consent judgment—eliminating access to regular tuition rates and eviscerating the rights of numerous third parties—without providing any public hearing.  By failing to hold a public hearing, the district court deprived affected persons of any opportunity to be heard or to exercise their constitutional right to seek redress.  This closed proceeding effectively denied OSAT's members a meaningful opportunity to challenge the consent judgment and deprivation of their rights.  Further, any objection to the magistrate judge's Report and Recommendation was limited to three days after its issuance—which significantly reduced the time provided by Federal Rule of Civil Procedure 72(b)(2) to file objections.  Accordingly, the district court violated the First Amendment's guarantee that all persons may petition their government for redress of grievances.

The district court's entry of a consent judgment also violated due process of law.  "The fundamental requisite of due process of law is the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (internal quotation marks and citation omitted).  Due process requires "appris[ing] interested parties of the pendency of the action and afford[ing] them an opportunity to present their objections." *Id.* at 314 (citations omitted).  That opportunity must be provided at "a meaningful time and in a meaningful manner." *Goldberg v. Kelly*,

397 U.S. 254, 267 (1970). "Parties whose rights are to be affected are entitled to be heard[.]" *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (internal quotation marks omitted).

Before eliminating the legal entitlements of numerous affected third parties, the district court was constitutionally required to provide notice and opportunity for them to participate in a public hearing. Courts have held, "binding litigants to the rulings of cases in which they have no right to participate—let alone case[s] of which they have no knowledge—violates basic principles of due process." *Heckman v. Live Nat. Enter., Inc.*, 120 F.4th 670, 684 (9th Cir. 2024) (citing *Hasberry v. Lee,* 311 U.S. 32, 40–43 (1940)). By entering the consent judgment without such a hearing, the district court deprived OSAT's members of the opportunity to intervene or to be heard before their rights were rescinded.

The rights of OSAT's members to regular tuition rates constitute an entitlement under Oklahoma law protected by due process. This case is analogous to the principle articulated in *Goldberg v. Kelly*, 397 U.S. 254 (1970), where the Supreme Court made clear that individuals must receive a meaningful opportunity to be heard before being deprived of entitlements under state law. *Id.* at 262 (welfare recipients are constitutionally entitled to a hearing and an "opportunity to be heard . . . at a meaningful time and in a meaningful manner" before the termination of entitlements) (internal quotation marks and citations omitted). *Goldberg* provided

13

for each individual's right to adequate due process, yet here the district court deprived numerous individuals of an entitlement under state law without a hearing and without sufficient time to object to the Report and Recommendation. The district court's actions violated core due-process principles.

Indeed, the Tenth Circuit recognizes that students have a protected property interest to receive an education and that a student cannot be deprived of that opportunity without due process. *See, e.g., Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.,* 245 F.3d 1172, 1181 (10th Cir. 2001) (student had property interest in his place in nursing school); *Hatch v. Goerke*, 502 F.2d 1189, 1195 (10th Cir. 1974) ("[T]he opportunity to receive an education" is a "protected interest" of which a student cannot be deprived without due process); *Lemon v. Labette Comm. Coll.*, 6 F. Supp. 3d 1246, 1251 (D. Kan. 2014) ("The Tenth Circuit has held, based on various state laws, that students at public institutions may have a protected property interest in their continued enrollment.") (collecting cases).

The safeguards of due process are relevant when a court decision affects a large number of individuals. In the context of mass arbitration protocols, courts have recognized that when the rights of numerous persons are decided collectively, the "absent members [in a class] must be afforded notice, an opportunity to be heard, and a right to opt out of the class." *Heckman*, 120 F.4th at 684 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 349 (2011)). Courts cannot eliminate

the rights of persons en masse without affording them the protections that due process requires.

Public court hearings serve a vital constitutional function: they ensure transparency, public confidence in the judicial process, and assurance that the court has the opportunity to consider the interests of all affected parties before undertaking a decision that curtails significant rights. As the Supreme Court has emphasized, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572 (1980). "Closed proceedings, although not absolutely precluded, must be rare and only for cause shown that outweighs the value of openness." *Press-Enter. Co. v. Superior Ct. of California, Riverside Cnty.*, 464 U.S. 501, 509 (1984). "The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* at 510.

Because the district court approved a consent judgment, without holding a noticed public hearing or sufficient time to raise objections, it deprived numerous third parties, including OSAT's members, of their constitutionally guaranteed right to redress their grievances and the due-process opportunity to be heard before their access to regular tuition rates was rescinded. The lack of a noticed public hearing, therefore, constitutes reversible error.

**B. The Challenged Provisions Comply with Federal Law[5]**

Section 1623(a) states that students without lawful immigration status "shall not be eligible *on the basis of residence* unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphasis added). The phrase "on the basis of residence" cannot be superfluous and must be given its proper meaning. *See TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (internal quotation marks and citation omitted)). Thus, the question before this Court is whether Section 1623(a) prohibits educational benefits for students without lawful immigration status if they are based *solely on residency* or if they are based *in any way on residency*. The district court erred because it appears to have concluded that the challenged provisions violate Section 1623(a) based on the latter construction.

---

[5] Although the United States presented a cursory challenge based on 8 U.S.C. § 1621(d), the United States' theory is not adequately explained, and the district court only evaluated the preemption issue under Section 1623(a). *See* App. Vol. 1 at 26–28. Nonetheless, Oklahoma complied with Section 1621(d) because the legislation and regulations at issue were enacted after August 22, 1996. *See* Okla. Stat., Title 70, § 3242; OSRHE Policy § 3.18.2.E and former OSRHE Policy § 3.18.6.

The challenged provisions, enacted years after Section 1623(a), were written to comply with Section 1623(a). *See Dir., Off. of Workers' Comp. Programs, U.S. Dep't of Lab. v. Perini N. River Assocs.*, 459 U.S. 297, 319 (1983) (elected representatives are presumed to know the law) (citation omitted). Indeed, for more than two decades, no presidential administration, regardless of political party, questioned their validity or sought to challenge them. During that same period, Congress—fully aware of the challenged Oklahoma provisions and nearly two dozen similar laws enacted by other states—has not amended Section 1623(a) to address the proliferation of these laws. Congress's decision not to amend Section 1623(a) confirms that the interpretation adopted by several states—under which they may extend regular tuition rates if they are not based *solely* on residency—reflects Congress's accepted understanding of the statute's proper application. Just as congressional inaction in the face of an agency's interpretation of a statute may indicate legislative approval, Congress's failure to revise Section 1623(a) is evidence that the prevailing interpretation reflects its intended meaning. *See N.L.R.B. v. Bell Aerospace Co. Div. of Textron*, 416 U.S. 267, 275 (1974).

Congress's long silence in the face of widespread state practice reflects not only acquiescence but also recognition of what Section 1623(a) actually provides. The statutory text, read in its full context, demonstrates that Congress did not impose a categorical prohibition on states providing educational benefits to students without

lawful immigration status. *See Martinez v. Regents of Univ. of Cal.,* 50 Cal. 4th 1277, 1291 (2010) ("If Congress had intended to prohibit states entirely from making unlawful aliens eligible for in-state tuition, it could easily have done so."). Rather, Section 1623(a) reflects a narrower congressional directive: states may not condition eligibility for postsecondary education benefits *solely* on residence unless they make the same benefits available to U.S. citizens regardless of residence. *See id.*; 8 U.S.C. § 1623(a). Thus, Section 1623(a) must be understood to allow states to provide higher education benefits to students without lawful immigration status as long as they comply with Section 1623(a)'s limitations—basing eligibility on something other than residence alone.

Under both the plain language of the statute and established principles of statutory construction—which courts presume Congress legislates with understanding of—the challenged provisions must be understood to fall within the contours of Section 1623(a). *See Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991) ("Congress is understood to legislate against a background of common-law adjudicatory principles.").

1.  **The Plain Language of Section 1623(a) Only Prohibits Benefits Based *Solely* on Residency**

The plain language of Section 1623(a), which legislatures from many states have reasonably interpreted, prohibits only those educational benefits that are based

solely on residence. The first step in statutory interpretation is to look at the statutory text itself and determine whether it is unambiguous. *See BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). Here, the text of Section 1623(a) is unambiguously narrow. It states that a person without lawful immigration status cannot be "eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . ." 8 U.S.C. § 1623(a). Congress did not use broader formulations that would have explicitly extended the prohibition beyond benefits based solely on residence. For example, Congress could have phrased Section 1623(a) to include the following:

- shall not be eligible based in whole or in part on residence within a State;

- shall not be eligible based in any way on residence within a State; or

- shall not be eligible on the basis of anything related to residence within a State.

Any one of these phrasings in Section 1623(a) would have clearly prohibited states from providing educational benefits if they were based in any respect on residence. But Congress elected not to do so. That means that Congress only intended to prohibit benefits if they were based *solely* on residence.

Oklahoma does not grant benefits to immigrants based solely on residency. Instead, the challenged provisions conform with the requirements of Section 1623(a) by requiring high school graduation, as well as a copy of an application or petition filed with the United States Citizenship and Immigration Services or an affidavit

19

stating that the student will file an application to legalize his or her immigration status at the earliest opportunity the student is eligible to do so. *See* Okla. Stat., Title 70, § 3242(A)–(B); OSRHE Policy § 3.18.6. These requirements establish eligibility based on academic achievement within the state and current or future compliance with federal immigration processes—two criteria deemed important by Oklahoma. Thus, residence is just one of the criteria that is considered rather than the sole determinative factor, which puts the challenged provisions outside the narrow scope of Section 1623(a).

Even if there is some ambiguity regarding Section 1623(a), other principles of statutory construction also support a reading that Section 1623(a) prohibits benefits conferred *solely* on the basis of residence within a state.

## 2. The Canon of *Expressio Unius* Confirms that Section 1623(a) Does Not Preclude Benefits Here

The statutory-construction canon of *expressio unius est exclusio alterius* (the "mention of one thing implies the exclusion of another thing") further reinforces that Section 1623(a) does not bar states from providing educational benefits if they are based on criteria in addition to residence. *See Halverson v. Slater*, 129 F.3d 180, 185 (D.C. Cir. 1997) (citation and quotation omitted). Under this principle, when Congress chooses to specify a particular restriction in statutory language, it is

presumed that Congress intentionally omitted other potential restrictions that it could have easily imposed.

Here, Congress identified only one impermissible basis for providing educational benefits: residence within a state. Its omission of any language precluding benefits conditioned on other criteria, such as high school attendance or graduation, indicates that Congress did not want the statute to reach state laws that confer benefits on criteria in addition to residency. As the California Supreme Court noted when it interpreted this very provision, "[t]he reference to the benefit being on the basis of residence must have some meaning. It can only qualify, and thus limit, the prohibition's reach." *Martinez*, 50 Cal. 4th at 1291. In other words, by specifying residence as the sole prohibited basis, Congress implicitly excluded from the statute's reach state laws with additional non-residency-based conditions.

This inference is particularly compelling in the context of higher education, where states have long conditioned benefits, such as tuition rates, on factors such as high school attendance and graduation, academic achievement, and financial need. These are all familiar, legitimate, and predictable criteria that Congress surely knew states employed when it drafted Section 1623(a). The fact that Congress did not include any of these criteria in Section 1623(a) means that Congress only intended for the statute to apply to benefits based solely on residency. *See United States v. Vonn*, 535 U.S. 55, 65 (2002) ("[E]xpressing one item of a commonly associated

group or series excludes another left unmentioned."). Further, as noted above, Congress has seen various states pass laws similar to the challenged provisions over the past quarter century and has never deemed it necessary to amend Section 1623(a).

Accordingly, under the canon of *expressio unius*, Section 1623(a) cannot be construed to invalidate state laws that incorporate additional, non-residency criteria. The district court's decision to hold otherwise expands the statute beyond what Congress legislated and intended under well-established principles of statutory interpretation.

### 3. General Principles of Severability Further Confirm that Congress Did Not Intend to Preclude State Laws that Confer Benefits Based on More Than Just Residence

Additionally, longstanding principles of severability confirm that Section 1623(a) was not intended to invalidate entire statutory schemes merely because they incorporate residency among other eligibility criteria.[6] That is because Congress is presumed to understand that courts across the country will not invalidate more than what is necessary in a statute. Indeed, the Supreme Court has cautioned courts as

---

[6] Severability in this context supports OSAT's interpretation of Section 1623(a), based on congressional understanding when it enacted the statute. It is distinct from argument concerning the specific severability of the challenged provisions, which is discussed below.

much.  *See Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984).  It has stated that "[u]nless it is evident that the legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is *fully operative* as a law."  *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172, 191 (1999) (citation omitted) (emphasis added).  Several states also require severability of statutes if the remaining portions are operative.  For example, California and Washington courts may sever a provision if it is "grammatically, functionally, and volitionally separable" from the remainder of the statute.  *Jevne v. Super. Ct.*, 111 P.3d 954, 971–72 (Cal. 2005); *State v. Abrams*, 178 P.3d 1021, 1025–27 (Wash. 2008).  Oklahoma also permits severability, "[s]urvival of untainted statutory provisions that remain is appropriate when the valid and voided (because unconstitutional) provisions are not so 'inseparably connected with and so dependent upon' each other that the surviving provisions would not have otherwise been enacted."  *Liddell v. Heavner*, 180 P.3d 1191, 1203 (Okla. 2008).  Under Oklahoma law, courts must preserve the statute through severance.  *See Conaghan v. Riverfield Cnty. Day Sch.*, 163 P.3d 557, 565 (Okla. 2007) ("A cardinal principle of statutory construction is to save and not destroy."); *Okla. Corr. Prof. Ass'n, Inc. v. Jackson*, 280 P.3d 959, 965 (Okla. 2012) ("[P]resumption that if one portion of a statutory provisions should fail, the balance should retain its validity.").

Severability nationwide, then, incorporates some notion of functionality; laws that cannot function without the severed portion cannot survive, while those that can function without the severed portion can survive if consistent with legislative intent. With that understanding of severability principles applied across the country, had Congress intended to nullify state schemes that confer benefits based on residency in any manner, it would have understood that it needed to speak clearly to overcome severability of the residency provisions. Congress is presumed to have understood that state laws with residency as the sole criterion could not function or operate once that sole criterion is severed; by contrast, laws with more than one criterion of eligibility could function or operate with the single criterion of residency severed.

For example, a state legislature seeking to provide regular tuition rates to students without lawful immigration status might pass a law that includes two criteria, one of which requires residence within the state, but one that does not. In that situation, Congress's wording of Section 1623(a) does not achieve the purported goal to invalidate the entire statutory scheme. Yet, Congress failed to make clear any intent to strike laws with multiple criteria, of which residency is but one. Instead, the phrasing of Section 1623(a) targets only those state laws granting benefits based solely on residence, leaving undisturbed those, like in Oklahoma, that base eligibility on additional, independent criteria.

**4. The District Court's Construction is Unsupported by the Complaint's Own Allegations**

The district court's expansive interpretation of Section 1623(a) is not only at odds with the statutory construction principles described above, but it is also unsupported by the allegations set forth in the United States' complaint. In its complaint, the United States explicitly alleges that "a state may not offer in-state tuition . . . benefits to individuals who are unlawfully present in the United States based *solely* on their residence in the state[.]" App. Vol. 1 at 13 (emphasis added). Nowhere in the complaint does the United States otherwise characterize the federal law. If, as the complaint suggests, the "solely" standard is the benchmark for a violation, the challenged provisions—which require more than residence within the state—cannot trigger federal preemption.

By ignoring the United States' own framing of the issue, the district court improperly expanded the scope of Section 1623(a) beyond the very allegations brought before it. Accordingly, the challenged provisions comply with federal law.

**C. Section 1623(a) Violates the Tenth Amendment[7]**

---

[7] This Court need not reach this issue if it agrees that the challenged provisions comply with Section 1623(a) and that the district court erred in holding otherwise. *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

If this Court were to agree with the district court, despite the contentions above, that the challenged provisions conflict with Section 1623(a), that conflict would necessarily call into question the constitutionality of Section 1623(a) itself. That is because Section 1623(a) does not simply regulate immigration or the conduct of private individuals. The condition to provide benefits to all U.S. citizens and residents cannot be a regulation of immigrants because they have no power to satisfy the condition. Instead, the statute directs state legislatures to structure their own laws in accordance with federal preferences—dictating when and how states may extend educational benefits to their residents and to non-residents from other states. In doing so, Congress has crossed the line from exercising its enumerated powers into a realm reserved exclusively to the states, which raises serious Tenth Amendment concerns.[8]

The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X. As the Supreme Court has made clear, "the power of the Federal Government is subject to limits that may, in a given instance, reserve power to the States." *New York v. United States*, 505 U.S.

---

[8] OSAT has standing to assert a Tenth Amendment argument because the district court's order striking down the challenged provisions caused injury to its members. *See Bond v. United States*, 564 U.S. 211, 220 (2011) ("[I]ndividual[s], in a proper case, can assert injury from governmental action taken in excess of the authority that federalism defines.").

144, 157–58 (1992); *see also Arizona v. United States*, 567 U.S. 387, 398 (2012) ("[B]oth the National and State Governments have elements of sovereignty the other is bound to respect."). When the federal government issues commands to the states—whether by direct order or by coercive condition—it violates the foundational principle of dual sovereignty. As explained below, Section 1623(a) improperly instructs and coerces state legislation, intruding upon education, a traditional area of exclusive state authority, and therefore diffuses accountability.

## 1. The Federal Government Cannot Tell the State How to Legislate

Section 1623(a) improperly purports to authorize Congress to tell the Oklahoma legislature what it "may and may not do." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 474 (2018); *see also Printz v. United States*, 521 U.S. 898, 935 (1997) ("Congress cannot compel States to enact or enforce a federal regulatory program."). The United States Constitution limited but did not eliminate the sovereignty of the states. "Thus, both the Federal Government and the States wield sovereign powers, and that is why our system of government is said to be one of 'dual sovereignty.'" *Murphy*, 584 U.S. at 470 (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)).

Within this dual-sovereignty system, Congress has the power to regulate on matters of immigration. As the Supreme Court stated in 2012, "[t]he Government of the United States has broad, undoubted power over the subject of immigration

27

and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012). That is based upon its "power to 'establish an uniform Rule of Naturalization' and its inherent power as sovereign to control and conduct relations with foreign nations." *Id.* at 394–95 (citations omitted). However, federal power over immigration matters does not give the federal government power over states themselves. The Supreme Court clarified that limitation in federal power when it stated that "regardless of the language sometimes used by Congress and this Court, every form of preemption is based on a federal law that regulates the conduct of private actors, not the States." *Murphy*, 584 U.S. at 479 (explaining the reasoning in *Arizona v. United States*, 567 U.S. 387 (2012)).

In that sense, Congress was within its authority to completely foreclose benefits to students without lawful immigration status. A statute that did that would be nested within congressional power over immigration by specifically regulating the conduct of immigrants as private actors. Thus, in this case, there would be no Tenth Amendment concern if Section 1623(a) ended before "unless." But Congress did not choose to completely ban educational benefits for undocumented students. Instead, Congress decided to allow undocumented students to receive educational benefits *only if* states made all U.S. citizens or nationals also eligible for those benefits. This is the problem with Section 1623(a).

By adding that requirement, states that want to provide educational benefits to undocumented students based on their residency within the state, must change their laws to also provide those same benefits to all United States citizens or nationals. *See* 8 U.S.C. § 1623(a). Such a requirement to legislate in that specific manner tells a state what it "may and may not do." *Murphy*, 584 U.S. at 474. It is "as if federal officers were installed in state legislative chambers and were armed with the authority to stop legislators from voting on any offending proposals." *Id.* Or it is as if federal officers were inserting provisions in state legislation without the consent of the legislators. That is something Congress simply cannot do under the Tenth Amendment. This limitation applies when the federal government "directly commands" a state to regulate or "indirectly coerces" it into adopting a federal regulatory system. *Nat'l Fed. of Indep. Bus. v. Sebelius*, 567 U.S. 519, 578 (2012)

As the Supreme Court made clear, "conspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States." *Murphy*, 584 U.S. at 471. "The Federal Government may neither issue directives requiring the States to address particular problems, nor command the States' officers, or those of their political subdivisions, to administer or enforce a federal regulatory program." *Printz*, 521 U.S. at 935. "[S]uch commands are fundamentally incompatible with our constitutional system of dual sovereignty." *Id.* Thus, regardless of what problem Congress may have perceived with providing, or

not providing, in-state tuition to citizen residents of other states, it has no authority to tell any state how to legislatively address the matter.

Moreover, Section 1623(a)'s requirement to provide educational benefits to non-resident United States citizens or nationals has *nothing* to do with immigration. The mere fact that it is embedded in a statute as a part of IIRIRA does not mean that it confers on Congress powers that are beyond what is reserved to it by the Constitution.[9]   If Congress could regulate broader state tuition policies simply because the beneficiaries include students without lawful immigration status, there would be no limiting principle: Congress could just as easily condition a state's decision to extend those educational benefits to immigrants on that state's reduction of sales tax rates by fifty percent.  Such a condition would also be unconstitutional because Congress has no authority to compel or penalize a state's internal fiscal or educational policy choices under the guise of regulating immigration.

Ultimately, Section 1623(a) functions as a coercive tool for Congress to bring state policy into alignment with federal preferences.  Several states, like Oklahoma, have decided that it serves their interest to extend regular tuition rates to students without lawful immigration status who have resided in their state and graduated high

---

[9] Congress was trying to coerce its preferred policy on immigration by adding the condition about citizens from other states, but that is improper coercion under the Tenth Amendment because it dictates policy in a plainly non-immigration-related area that is reserved exclusively to the states.

school. Congress, through Section 1623(a), overrides those state decisions by imposing an onerous condition that no state would accept: providing regular tuition rates to all U.S. citizens regardless of their connection to the state. States simply cannot afford to provide regular tuition rates to all U.S. citizens from other states. That would obliterate in-state tuition schemes and result in massive financial loss to public universities. Thus, Congress has sought to do what it cannot and compel states to follow federal policy directives in state legislation. *See New York*, 505 U.S. at 161 (1992) (stating that Congress may not compel states to enact a federal regulatory program). As the Supreme Court emphasized, "Congress cannot order states to forgo a sovereign power by an explicit command or a conditional offer a State cannot refuse." *Nat'l Fed. of Indep. Business v. Sebelius*, 567 U.S. 519, 576–77 (2012).

Because Section 1623(a) allows the federal government to coerce state legislation, it impermissibly violates state sovereignty.

2. **Section 1623(a) Improperly Intrudes on State Power Over Education by Requiring Oklahoma to Expand Education Benefits to All U.S. Citizens**

Section 1623(a), by requiring states to provide educational benefits to all U.S. citizens and nationals—something completely unrelated to the regulation of immigration—intrudes upon a domain historically and constitutionally reserved to

the states: education policy and funding. "The American people have always regarded education and the acquisition of knowledge as matters of supreme importance." *Plyler v. Doe*, 457 U.S. 202, 221 (1982) (internal quotations and citation omitted). Indeed, education and its acquisition are universally recognized as core state functions. *See, e.g., Brown v. Bd. of Ed. of Topeka, Shawnee Cty., Kan.*, 347 U.S. 483, 493 (1954) ("Today, education is perhaps the most important function of state and local governments."); *Milliken v. Bradley*, 418 U.S. 717, 741 (1974) ("No single tradition in public education is more deeply rooted than local control over the operation of schools"); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 29 (1973) ("[E]ducation is perhaps the most important function of state and local governments."). Thus, federal intrusion into this domain must be looked upon with utmost caution.

State control of education is not a matter of administrative convenience, but a constitutional necessity that flows from our system of dual sovereignty. It ensures that decisions about the education of a state's citizenry, including how to fund schools, determine curricula, or structure tuition, are made by the states according to mandates by their citizens. *See Wisconsin v. Yoder*, 406 U.S. 205, 213 (1972) ("Providing public schools ranks at the very apex of the function of a State.").

Section 1623(a) intrudes into state sovereignty over education when it mandates that if a state wishes to offer regular tuition or similar educational benefits

to certain immigrants, it must extend those same benefits to all U.S. citizens and nationals, regardless of whether they reside in that state. *See* 8 U.S.C. § 1623(a). This federal directive effectively overrides state determinations about who qualifies for regular tuition, who merits financial support, and how state funds should be distributed among students. Those are quintessential state policy judgments—ones that the federal government has no constitutional authority to dictate.

What makes this intrusion particularly troubling is the manner in which Congress enters the field of education—through the shadow of an immigration statute. Section 1623(a) appears in the IIRIRA, a law enacted to strengthen federal control over immigration enforcement. But Section 1623(a)'s conditional clause does not determine who may enter or remain in the United States or who may obtain immigration status. Instead, it regulates how states allocate tuition rates among their citizen students, a question of domestic education policy—not immigration. Thus, Section 1623(a) is an impermissible intrusion into state sovereignty over education.

**3. Section 1623(a) Undermines Political Accountability and Structural Safeguards of Federalism**

Beyond intruding into state education functions, Section 1623(a) also undermines one of the most fundamental protections of the federalist system: political accountability. Federalism is not merely a division of power between the federal and state governments; it is a structural safeguard to ensure that both levels

of government remain directly answerable to their respective constituents. *See New York*, 505 U.S. at 168 ("Accountability is . . . diminished when, due to federal coercion, elected state officials cannot regulate in accordance with the views of the local electorate in matters not pre-empted by federal regulation."). Thus, when federal law forces state legislatures to enact or maintain policies not of their choosing, accountability blurs. Citizens can no longer tell whether their state officials or Congress are to blame for unpopular policies. This is contrary to what the Constitution contemplates—"that a State's government will represent and remain accountable to its own citizens." *Printz*, 521 U.S. at 920.

Section 1623(a) produces this exact problem. By requiring states to extend regular tuition to all U.S. citizens and nationals as a condition of offering that benefit to students without lawful immigration status, the federal government forces state legislatures to enact policies that they, and their constituents, do not want to enact.

This is especially important regarding decision-making concerning tuition rates at public colleges and universities, which belongs exclusively to the states. The core concept of accountability is undermined when the federal government mandates that Oklahoma extend regular tuition to all U.S. citizens—regardless of their ties to the state. Decisions about tuition rates and eligibility for other educational benefits are central to state policy. Each State must balance fiscal realities, economic priorities, and educational goals in determining how to allocate limited public funds.

34

When Congress dictates the outcome of those decisions—by commanding that they extend educational benefits to all U.S. citizens, it strips those choices from the people and their elected state representatives. What results is that state officials bear the political cost of a policy they were forced to adopt, while Congress reaps the benefit of setting a national policy without the political consequences of implementing or funding it.

The Constitution does not permit Congress to obscure accountability in this way. Because educational policy and tuition decisions belong to the states, the federal government may not require them to provide regular tuition rates to individuals that the states have deemed ineligible.

**D. The District Court Failed to Consider Whether the Challenged Provisions Are Severable and Remain Operable**

The district court erred when it invalidated the challenged provisions in its entirety. As mentioned above, courts are not empowered to strike down an entire statute merely because one portion may be invalid. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) (courts should not "nullify more of a legislature's work than is necessary"). That is particularly problematic where a state legislature has expressed a preference for severability or where state law provides a severability rule.

Here, Oklahoma law presumes and expressly provides for severability even when a statute lacks a specific severability clause. *See* 75 Okla. Stat. 2011 § 11a(1). Oklahoma provides, in relevant part:

> If any provision or application of the act is found to be unconstitutional and void, the remaining provisions or applications of the act shall remain valid, unless the court finds: (a) the valid provisions or application of the act are so essentially and inseparably connected with, and so dependent upon, the void provisions that the court cannot presume the Legislature would have enacted the remaining valid provisions without the void one; or (b) the remaining valid provisions or applications of the act, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

*See id.* Thus, in Oklahoma, the default rule is that statutes are severable unless the invalid portion is essential to the remaining portion or the remaining portion cannot stand on its own. *See Wilson v. Fallin*, 262 P.3d 741, 746 (Okla. 2011) ("Unless we determine that the valid provisions are dependent upon and inseparably connected to the invalid provision or that the valid provisions standing alone are incomplete and incapable of being executed, they are severable.").

The challenged provisions satisfy that standard. The relevant portion states that "a student [is] eligible for resident tuition if the student: (1) Graduated from a public or private high school in this state; and (2) Resided in this state with a parent or legal guardian while attending classes at a public or private high school in this state for at least two (2) years prior to graduation." Okla. Stat. Title 70, § 3242(A)(1)–(2). It contains distinct criteria for students to receive regular tuition:

high school attendance and graduation within Oklahoma (Okla. Stat. Title 70, § 3242(A)(1)), and live with parents within the state for two years while attending high school (Okla. Stat. Title 70, § 3242(A)(2)).

These provisions are independent of one another. Each clause of § 3242(A) is drafted as an independent condition, separated by clear subparagraphs, punctuation, and statutory numbering. Either of the two provisions could operate alone. Further, if the location modifier "in this state" is severed from subparagraph (2), the statute would comply with the district court's interpretation of Section 1623(a) and still remain fully coherent. The resulting two-year attendance requirement, and the requirement to live with parents remain valid criteria to confer benefits.

Each also serves a distinct legislative purpose. The high school graduation and the two-year attendance requirement clauses express the Oklahoma Legislature's intent to reward students who have spent formative years in Oklahoma schools and have integrated into the state's educational system. They recognize a student's investment in and connection to the State's academic community. Thus, even if the residence portion of the provision is held to be unconstitutional, it could be severed from the rest of the statute, leaving the high school graduation and two-year attendance requirement of Oklahoma Statute, Title 70, § 3242 in place.

Accordingly, assuming the district court would have disagreed with OSAT regarding the proper interpretation of Section 1623(a)'s residence prohibition, it still erred by failing to consider severability when it granted the extraordinary remedy requested by the Parties. Accordingly, OSAT respectfully asks this Court to remand the case for the district court to consider the severability issue, which requires specific findings and conclusions that must be reached by the district court. *See Ayotte*, 546 U.S. at 331 (remanding for the lower court to consider severability issue).

## CONCLUSION

For each and all of the foregoing reasons, OSAT respectfully asks this Court to lift the consent judgment order entered without considering any of these issues, and remand the case for further proceedings.

## STATEMENT REGARDING ORAL ARGUMENT

This appeal presents significant questions of federal preemption and constitutional law under the Tenth Amendment. The procedural posture, involving the entry of a final consent judgment without a hearing and an appeal by an intervenor, is complex. Oral argument would assist the Court in addressing the merits of the underlying preemption and constitutional claims concerning the erroneous invalidation of Oklahoma laws that have been in effect for more than two decades.

Date: March 5, 2026

Respectfully submitted,

*/s/ Fernando Nuñez*
Thomas A. Saenz (Cal. Bar No. 159430)
Fernando Nuñez (Cal. Bar No. 327390)
Luis L. Lozada (Cal. Bar No. 344357)
**MEXICAN AMERICAN LEGAL DEFENSE
AND EDUCATIONAL FUND**
634 South Spring Street, 11th floor
Los Angeles, CA 90014
Facsimile: (213) 629-0266
Email: tsaenz@maldef.org
      fnunez@maldef.org
      llozada@maldef.org

*Attorneys for* Oklahoma *Students
for Affordable Tuition*

## CERTIFICATION OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,495 words excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

Respectfully submitted,

*/s/ Fernando Nuñez*
Fernando Nuñez (Cal. Bar No. 327390)

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2026, I filed the foregoing with the Clerk of

the Court via CM/ECF, which will deliver electronic copies to all counsel of record

in this appeal.

Respectfully submitted,

*/s/ Fernando Nuñez*
Fernando Nuñez (Cal. Bar No. 327390)

*Attorney for Oklahoma Students*
*for Affordable Tuition*

Oklahoma State Regents for Higher Education

3.18   In-State/Out-of-State Status of Enrolled Students

[…]

3.18.6 Undocumented Students

Pursuant to 70, O.S. § 3242 an individual who cannot present to the institution valid documentation of United States nationality or an immigration status permitting study at a postsecondary institution but who:

A.   Graduated from a public or private Oklahoma high school; and

B.   Resided in this state with a parent or legal guardian while attending classes at an Oklahoma public or private high school for at least two (2) years prior to graduation; and

C.   Satisfies admission standards for the institution. Students are eligible for enrollment and/or out-of-state tuition waivers if that individual:

   1.   Provides the institution with a copy of a true and correct application or petition filed with the United States Citizenship and Immigration Service (USCIS) to legalize the student's immigration status, or

   2.   Files an affidavit with the institution stating that the student will file an application to legalize his or her immigration status at the

earliest opportunity the student is eligible to do so, but in no case later than:

a. One (1) year after the date on which the student enrolls for study at the institution, or

b. If there is no formal process to permit children of parents without lawful immigration status to apply for lawful status without risk of deportation, one (1) year after the date the USCIS provides the formal process, and

3. If the student files an affidavit pursuant to subsection 2.b. above, presents to the institution a copy of a true and correct application or petition filed with the USCIS no later than:

a. One (1) year after the date on which the student enrolls for study at the institution, or

b. If there is no formal process to permit children of parents without lawful immigration status to apply for lawful status without risk of deportation, one (1) year after the date the USCIS provides the formal process, which copy shall be maintained in the institution's records for that student.

4. Any student who completes and provides the institution with a copy of a true and correct application or petition filed with USCIS to 4 legalize the student's immigration status shall not be disqualified on the basis of the student's immigration status from any scholarships or financial aid provided by this state as long as the student meets all of the following:

a. Graduated from a public or private Oklahoma high school;

b. Resided in this state with a parent or legal guardian while attending classes at an Oklahoma public or private high school in this state for at least two (2) years prior to graduation; and

c. Satisfies admission standards for the institution.

# RULE 28.2 ATTACHMENTS

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,     )
          )
     Plaintiff,     )
          )     Case No. 25-CV-265-RAW-DES
v.     )
          )
STATE OF OKLAHOMA,     )
          )
     Defendant.     )

**REPORT AND RECOMMENDATION**

This matter comes before the Court on the Plaintiff, United States of America and Defendant, State of Oklahoma's Joint Motion for Entry of Consent Judgment. (Docket No. 9). On August 6, 2025, United States District Judge Ronald A. White referred this case to Magistrate Judge D. Edward Snow for all pretrial and discovery matters, including dispositive motions, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72. (Docket No. 10). For the reasons set forth below, the undersigned Magistrate Judge recommends the Parties' Joint Motion for Entry of Consent Judgment be GRANTED.

On August 5, 2025, the United States of America initiated this civil action seeking declaratory and injunctive relief pursuant to the Supremacy Clause of the U.S. Constitution, art. VI, cl. 2; 28 U.S.C. §§ 1651, 2201, and 2202; and the Court's inherent equitable authority. (Docket No. 2). The Complaint challenges the constitutionality of Okla. Stat. tit. 70, § 3242 and Oklahoma State Regents for Higher Education (OSRHE) Policy § 3.18.6, which govern the classification of postsecondary students for in-state tuition eligibility. *Id.* at 6. Under these provisions, individuals who are not lawfully present in the United States may qualify for in-state tuition or nonresident tuition waivers if they meet certain residency and high school graduation criteria. *Id.* at 7-8. OSRHE Policy further provides that such individuals may be eligible for state-funded scholarships

1

or financial aid if they submit documentation of an application to legalize their immigration status and meet other eligibility criteria. *Id.* at 8.

The United States asserts that these provisions are expressly preempted by 8 U.S.C. § 1623(a), which prohibits states from providing postsecondary education benefits to unlawfully present aliens based on state residency unless the same benefits are offered to all U.S. citizens regardless of residency. *Id.* at 10-11. Accordingly, the United States alleges that Okla. Stat. tit. 70, § 3242 and related OSRHE policies violate the Supremacy Clause and are therefore unconstitutional. The United States seeks a declaration to that effect and a permanent injunction against their enforcement. *Id.* at 11.

On August 5, 2025, in conjunction with Defendant, Plaintiff filed a Joint Motion for Entry of Consent Judgment. (Docket No. 9). In the Joint Motion, the Parties agree this Court has jurisdiction under 28 U.S.C. §§ 1331 and 1345 and that venue is proper under 28 U.S.C. § 1391. *Id.* at 2. The Parties further agree this Court has the authority to provide the requested relief under the Supremacy Clause, U.S. Const. Art. VI, cl. 2, as well as 28 U.S.C. §§ 1651, 2201, and 2022, and its inherent equitable powers. *Id.* Finally, the Parties agree that Okla. Stat., tit. 70, § 3242 and OSRHE Policy § 3.18.6 are preempted by 8 U.S.C. §§ 1623, 1621(d) and they request this Court enter a final judgment declaring that Okla. Stat., tit. 70, § 3242 and OSRHE Policy § 3.18.6 violate the Supremacy Clause and are therefore invalid. *Id.*

The Constitution's Supremacy Clause mandates that "[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Federal statutes may expressly preempt state laws and render them ineffective by declaring that intent on the face of the statute. *Arizona v. United States*, 567 U.S.

387, 399 (2012) ("There is no doubt that Congress may withdraw specified powers from the States by enacting a statute containing an express preemption provision."). "[U]nder the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992) (quotation omitted); *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981) (explaining that under the Supremacy Clause, state laws that conflict with federal law are "without effect"); *Colo. Dep't of Pub. Health & Env't, Hazardous Materials & Waste Mgmt. Div. v. United States,* 693 F.3d 1214, 1222 (10th Cir. 2012) ("In light of the federal Constitution's Supremacy Clause, it has long been recognized that federal law preempts contrary state enactments." (footnote omitted) (internal quotation marks omitted)).

Here, a federal law, 8 U.S.C. § 1623(a), contains an express preemption clause as it directs that "[n]otwithstanding any other provision of law," an alien not lawfully present in the United States "shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Accordingly, the undersigned Magistrate Judge RECOMMENDS the Joint Motion for Entry of Consent Judgment be GRANTED, and the proposed Order be entered.

Any objections to this Report and Recommendation must be filed within three days[1]. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The exigencies of the Court's calendar amid the ongoing *McGirt* crisis, require the Court to shorten the window for filing objections. *See United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978); *Sabal Trail Transmission, LLC. v. 7.72 Acres*

---

[1] The undersigned Magistrate Judge shortens the objection period after consulting with the presiding judge in this matter, U.S. District Judge Ronald A. White.

*in Lee Cnty., Ala.*, No. 3:16-CV-173-WKW, 2016 WL 10789585, at *1 (M.D. Ala. June 6, 2016) (collecting cases).[2] Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

DATED this 7th day of August, 2025.

_____
D. Edward Snow
United States Magistrate Judge

---

[2] Specifically, the Northern and Eastern Districts of Oklahoma have unprecedented caseloads and jurisdictional complexities since the Supreme Court's decision in *McGirt v. Oklahoma*, 140 S.Ct. 2452 (2020). *McGirt* caused an immediate increase of nearly 200% in the number of criminal cases filed in the Northern District and more than 400% in the Eastern District. *See* U.S. Courts, *Judiciary Supplements Judgeship Request, Prioritizes Courthouse Projects* (Sept. 28, 2021), https://www.uscourts.gov/news/2021/09/28/judiciary-supplements-judgeship-request-prioritizes-courthouse-projects. This extraordinary number of criminal cases thrust into federal court, virtually overnight, is unlike anything ever seen in this Country's history. Indeed, the Supreme Court has since recognized the "significant challenge for the Federal Government and for the people of Oklahoma" in the wake of *McGirt. Oklahoma v. Castro-Huerta*, 142 S.Ct. 2486, 2492 (2022). Numerous federal courts have "noted *McGirt*'s tremendous impact." *United States v. Budder*, 601 F. Supp. 3d 1105, 1114 (E.D. Okla. 2022) (collecting cases), *aff'd* 76 F.4th 1007 (10th Cir. 2023).

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Case No. CIV-25-265-RAW-DES** |
| | ) |
| **STATE OF OKLAHOMA,** | ) |
| | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Before the court is the Report and Recommendation of the United States Magistrate Judge, in which he recommended that the parties' joint motion for entry of consent judgment be granted.

No objection has been filed and the time allotted for doing so has expired.  "In the absence of a timely objection, the district court may review a magistrate's report under any standard it deems appropriate." *Summers v. Utah,* 927 F.2d 1165, 1167 (10th Cir.1991).  The court agrees with the reasoning of the Magistrate Judge's analysis and recommendation and finds that "there is no clear error on the face of the record."  *See* Rule 72(b) F.R.Cv.P., advisory committee note.

It is the order of the court that the Report and Recommendation (#11) is affirmed and adopted as the order of the court.  The joint motion for entry of consent judgment (#9) is granted.

**IT IS SO ORDERED** this 29th day of AUGUST, 2025.

_____
**RONALD A. WHITE**
**UNITED STATES DISTRICT JUDGE**

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. UNITED STATES OF AMERICA, | |
| Plaintiff, | CIVIL No. 6:25-cv-00265-RAW |
| v. | |
| 1. STATE OF OKLAHOMA, | |
| Defendant. | **ORDER AND FINAL** |
| | **CONSENT JUDGMENT** |

Before the Court is the Parties' **Joint Motion for Entry of a Consent Judgment**. ECF No. 9. Having considered the Motion, the Complaint, and applicable law, the Court **GRANTS** the Motion. Accordingly, the Court hereby **DECLARES** that the challenged provisions, Oklahoma Statutes, Title 70, §3242, and Oklahoma State Regents for Higher Education Policy ("OSRHE") § 3.18.6, as applied to aliens who are not lawfully present in the United States, violates the Supremacy Clause and are unconstitutional and invalid.

The Court also hereby **PERMANENTLY ENJOINS** Defendant as well as its successors, agents, and employees, from enforcing Oklahoma Statutes, Title 70, §3242, and OSRHE § 3.18.6, as applied to aliens who are not lawfully present in the United States.

This final judgment is issued pursuant to Federal Rule of Civil Procedure 58(a). The Clerk of the Court shall transmit a true copy of this judgment to the Parties.

SO ORDERED on this 29th day of August, 2025.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE