No. 25-7089

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*

v.

STATE OF OKLAHOMA,
*Defendant-Appellee*

v.

OKLAHOMA STUDENTS FOR AFFORDABLE TUITION,
*Movant-Appellant.*

————————————

On Appeal from the United States District Court for the Eastern District of
Oklahoma, No. 6:25-cv-00265, Hon. Ronald A. White

————————————

**UNITED STATES' ANSWERING BRIEF**
————————————

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY
ANDREW M. BERNIE
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW,*
    *Room 7539*
  *Washington, DC 20530*
  *(202) 514-3511*

**Oral Argument is Requested**

**TABLE OF CONTENTS**

**Page**

STATEMENT OF PRIOR RELATED APPEALS ......................................................1

INTRODUCTION ......................................................................................................1

JURISDICTIONAL STATEMENT ...........................................................................3

STATEMENT OF THE ISSUES................................................................................3

STATEMENT OF THE CASE....................................................................................4

      A.     Statutory Background..............................................................................4

      B.     Factual Background.................................................................................6

SUMMARY OF ARGUMENT ...................................................................................9

STANDARD OF REVIEW .......................................................................................13

ARGUMENT .............................................................................................................13

I.     This Court lacks jurisdiction to decide this appeal.........................................13

II.    If the Court decides this appeal, it should affirm. ........................................19

      A.     The challenged Oklahoma provisions are preempted. ........................19

      B.     Appellants' contrary arguments lack merit. ........................................22

            1.     The challenged provisions provide benefits "on the basis of residence" within Oklahoma. .................................22

            2.     OSAT's Tenth Amendment argument lacks merit. ..................28

            3.     OSAT's "severability" argument lacks merit. .........................36

C.      The district court did not violate the First Amendment or due process principles in entering the judgment. ........................................39

CONCLUSION ...............................................................................................42

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*Abercrombie & Fitch Stores, Inc.*,
   575 U.S. 768 (2015) ....................................................................................24

*Bostock v. Clayton County*,
   590 U.S. 644 (2020) ....................................................................................24

*Camfield v. City of Oklahoma City*,
   248 F.3d 1214 (10th Cir. 2001) ..................................................................13

*Central Kansas Credit Union v. Mutual Guaranty Corp.*,
   102 F.3d 1097 (10th Cir. 1996) ..................................................................13

*Clark v. Martinez*,
   543 U.S. 371 (2005) ....................................................................................36

*Devlin v. Scardelletti*,
   536 U.S. 1 (2002) ........................................................................................14

*Doe v. Public Citizen*,
   749 F.3d 246 (4th Cir. 2014) ......................................................................15

*Drywall Tapers & Pointers of Greater New York, Local Union 1974 v. Nastasi & Assocs. Inc.*,
   488 F.3d 88 (2d Cir. 2007) ............................................................... 15, 17, 18

*Federation of Adver. Indus. Executives, Inc. v. City of Chicago*,
   326 F.3d 924 (7th Cir. 2003) ......................................................................16

*Frost v. BNSF Ry. Co.*,
   914 F.3d 1189 (9th Cir. 2019) ....................................................................24

*Gade v. National Solid Wastes Mgmt. Ass'n*,
   505 U.S. 88 (1992) ........................................................................................7

*Goldberg v. Kelly*,
   397 U.S. 254 (1970) ....................................................................................41

*Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*,
   245 F.3d 1172 (10th Cir. 2001) ....................................................41

*Halderman v. Pennhurst State Sch. & Hosp.*,
   612 F.2d 131 (3d Cir. 1979) ........................................................15

*Heckman v. Live Nation Entertainment, Inc.*,
   120 F.4th 670 (9th Cir. 2024) .....................................................41

*Hodel v. Virginia Surface Mining and Reclamation Association, Inc.*,
   452 U.S. 264 (1981) ........................................................... 29, 33

*Marino v. Ortiz*,
   484 U.S. 301 (1988) ....................................................................13

*Martinez v. Regents of Univ. of California*,
   241 P.3d 855 (Cal. 2010) ............................................................39

*McCorvey v. Hill*,
   385 F.3d 846 (5th Cir. 2004) .......................................................16

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) .....................................................................40

*Murphy v. National Collegiate Athletic Association*,
   584 U.S. 453 (2018) ......................................................... 11, 31, 32

*Murray v. UBS Sec., LLC*,
   601 U.S. 23 (2024) .......................................................................23

*National Federation of Independent Business v. Sebelius*,
   (*NFIB*), 567 U.S. 519 (2012) ............................................... 33, 34

*Nicol v. Gulf Fleet Supply Vessels, Inc.*,
   743 F.2d 298 (5th Cir. 1984) .......................................................15

*Plain v. Murphy Family Farms*,
   296 F.3d 975 (10th Cir. 2002) .....................................................15

*Plyler v. Doe*,
   457 U.S. 202 (1982) .....................................................................28

*Printz v. United States*,
 521 U.S. 898 (1997) ...................................................................................11

*Rapanos v. United States*,
 547 U.S. 715 (2006) ..................................................................................27

*Roe v. Town of Highland*,
 909 F.2d 1097 (7th Cir. 1990).............................................................. 15, 18

*Solid Waste Agency of North Cook County v. U.S. Army Corps of Engineers*,
 531 U.S. 159 (2001) ..................................................................................26

*Southern Utah Wilderness Alliance v. Kempthorne*,
 525 F.3d 966 (10th Cir. 2008)............................................................. 13, 14

*Staley v. Harris County, Texas*,
 485 F.3d 305 (5th Cir. 2007).....................................................................16

*Taylor v. KeyCorp*,
 680 F.3d 609 (6th Cir. 2012)......................................................................15

*United States v. Blewett*,
 746 F.3d 647 (6th Cir. 2013).....................................................................36

*United States v. Richardson*,
 960 F.3d 761 (6th Cir. 2020).....................................................................36

*United States v Walz*,
 --- F. Supp. 3d ----, 2026 WL 851231 (D. Minn. Mar. 27, 2026)................. 21, 39

## Statutes, Court Rules, and Legislative Materials

8 U.S.C. § 1623 ................................................................................. *passim*

8 U.S.C. § 1623(a) ........................................................... 1, 4, 19, 21, 22

28 U.S.C. § 3702(1) ....................................................................................31

28 U.S.C. § 1331 ...........................................................................................3

28 U.S.C. § 1345 ...........................................................................................3

42 U.S.C. § 2000e-2(a) ..............................................................................24

Okla. Stat. tit. 70 § 3242 ................................................................................... *passim*

Fed. R. App. P. 3(c)(1)(A) .........................................................................13

Fed. R. App. P. 4(a)(1)(B) ...........................................................................3

Fed. R. App. P. 12.1(b) .............................................................................17

Fed. R. Civ. P. 62.1 .....................................................................................8

Immigration Reform and Immigrant Responsibility Act of 1996,
  Pub. L. No. 104-208, 110 Stat. 3009 (1996) ...........................................4

2025 OK S.B. 1633,
  Oklahoma Second Regular Session of the Sixtieth Legislature ...........................9

## OTHER

Oklahoma State Regents for Higher Education,
  Policy and Procedures Manual § 3.18 .............................................................5, 6

Okla. State Sys. of Higher Educ.,
  FY 2023-2024 Tuition and Fee Rates (Sep. 2023).................................................5

**STATEMENT OF PRIOR RELATED APPEALS**

There are no prior related appeals.

**INTRODUCTION**

Federal law provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit . . . without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). Oklahoma law nonetheless provided in-state tuition rates at public state colleges to aliens who are not lawfully present but satisfy residence requirements, even as U.S. citizens from other states must pay higher tuition rates. The conflict between Oklahoma's scheme—set forth in Okla. Stat. tit. 70, § 3242 (since repealed in relevant part) and Oklahoma State Regents for Higher Education (OSHRE) Policy Section 3.18.6 (which previously implemented this statute)—and federal law is clear on the face of the statutes.

The United States filed suit against Oklahoma, seeking invalidation of these provisions as applied to aliens who are not lawfully present in the United States. Because Oklahoma agreed with the United States that federal law expressly preempts these provisions, the parties requested that the district court enter a consent judgment. The assigned Magistrate Judge issued a report and recommendation concluding that the provisions were indeed preempted and, just over three weeks

later, the district court granted the motion and issued a final judgment declaring the provisions preempted as applied to unlawfully present aliens and enjoining their enforcement. Fifty-nine days after final judgment, appellant Oklahoma Students for Affordable Tuition (OSAT) sought intervention in the district court. One day later, OSAT filed a notice of appeal of the final judgment (which divested the district court of jurisdiction to rule on the intervention motion). That motion and a motion for an indicative ruling that OSAT filed in the district court just over three months ago both remain pending.

Initially, the Court lacks jurisdiction over this appeal. OSAT cannot appeal the district court's final judgment now because it was not and is not a party in the district court. And shortly before this brief was filed, Oklahoma repealed the statute at issue. Because this Court cannot reach the merits of the appeal, it should either dismiss this appeal or remand it to the district court so that court can potentially decide the intervention motion directly as well as determine the threshold question whether OSAT's attempted intervention is now moot.

If the procedural issues were resolved such that this Court could reach the merits, the district court's legal conclusion that federal law preempts these state provisions was clearly correct.

OSAT does not dispute that the Oklahoma scheme provided in-state tuition to unlawfully present aliens and that it did so despite not providing that same benefit

2

to non-resident U.S. citizens and nationals. Nor does OSAT dispute that the Oklahoma statute provides what it calls "resident tuition," which is available only to those who can establish continuous residence within Oklahoma for at least two years (in addition to graduation from an Oklahoma high school). That is a benefit "on the basis of residence" by any plausible definition. Finally, OSAT's contention that Section 1623(a) violates the Tenth Amendment as well as its hodgepodge of procedural challenges likewise fail and provide no basis for disturbing the final judgment in this case.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1345, *see* App. Vol. 1 at 10,[1] because this is an action brought by the United States and because this suit arises under federal law. OSAT filed a notice of appeal on October 28, 2025, 59 days after the judgment was entered. App. Vol. 1 at 51; *see* Fed. R. App. P. 4(a)(1)(B) (60-day time limit). This Court lacks appellate jurisdiction for reasons discussed further below. *See infra* pp. 13-19.

## STATEMENT OF THE ISSUES

1.      Whether this Court has jurisdiction over this appeal, where OSAT was not and has not been made a party in the district court, and where Oklahoma has repealed the statute at issue.

---

[1] Citations to "App." are to the Appellants' Appendix.

2.      If the Court reaches the merits of OSAT's appeal of the final judgment, whether the district court erred in entering final judgment in favor of the United States on the United States' challenge to Okla. Stat., tit. 70, § 3242 and OSHRE Policy Section 3.18.6, as applied to unlawfully present aliens.

## STATEMENT OF THE CASE

### A.    Statutory Background

**1.** In 1996, Congress passed, and President Clinton signed, the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA). *See* IIRIRA, Pub. L. No. 104-208, div. C, §§ 306, 308, 110 Stat. 3009-546, 3009-607 to 3009-612, 3009-614 to 3009-625 (1996).

As relevant here, IIRIRA included a "[l]imitation on eligibility for preferential treatment of aliens not lawfully present on basis of residence for higher education benefits." 8 U.S.C. § 1623. Section 1623(a) provides as follows:

> Notwithstanding any other provision of law, an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State (or a political subdivision) for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident.

*Id.* § 1623(a).

**2.** Like many states, Oklahoma charges resident students one tuition rate and charges non-resident students significantly more. Although the precise difference

4

varies depending on the institution, the tuition for nonresidents is generally two to three times higher. *See* Okla. State Sys. of Higher Educ., *FY 2023-2024 Tuition and Fee Rates* (Sep. 2023), https://perma.cc/373R-BCFS; *see also* App. Vol. 1 at 14.

Oklahoma law allows students to be eligible for reduced "resident tuition" at an Oklahoma public college or university if the student: (1) graduated from a high school in the state; and (2) resided in the state with a parent or legal guardian while attending an Oklahoma high school for at least two years prior to graduation. *See* Okla. Stat., tit. 70, § 3242(A). The statute also states that if such a student has secured admission to and enrolled in an Oklahoma public college or university, but cannot present valid documentation of United States nationality or an immigration status, the student remains eligible for reduced resident tuition if the student provides: (1) a copy of a true and correct application or petition filed with the U.S. Citizenship and Immigration Services (USCIS) to legalize the student's immigration status; or (2) an affidavit of intent to seek legalization of his or her immigration status within one year after USCIS establishes a process for the student to do so without risk of deportation (if there is not already such a process in place). *Id.* § 3242(B).

Pursuant to this statutory provision, OSRHE adopted a policy that establishes criteria and guidelines for classifying postsecondary students as in-state or out-of-state students for the purpose of assessing tuition rates. *See* OSRHE, *Policy and Procedures Manual* § 3.18, https://okhighered.org/state-system/policy-procedures/

(last visited May 26, 2026) (OSRHE Policy or Policy); *see also* App. Vol. 1 at 15. The Policy provided that unless residency has been established in another state, a person "who resided in Oklahoma at the time of graduation from an Oklahoma high school and has resided in the state with a parent or legal guardian for two years prior to graduation from high school will be eligible for in-state status." OSRHE Policy § 3.18.2(E).

## B.    Factual Background

The United States filed this action against Oklahoma on August 5, 2025, asserting that Okla. Stat. tit. 70, § 3242 and OSHRE Policy Section 3.18.6 are preempted by federal law. App. Vol. 1 at 10. Oklahoma agreed that the challenged provisions were preempted, and the parties filed a joint motion (also on August 5, 2025), requesting that the district court enter an order and final judgment declaring the challenged provisions unconstitutional under the Supremacy Clause and permanently enjoining them. App. Vol. 1 at 22-24.

On August 7, 2025, the Magistrate Judge issued a Report and Recommendation, concluding that Okla. Stat. tit. 70, § 3242 and OSRHE Policy Section 3.18.6 were preempted by federal immigration law. App. Vol. 1 at 25-28. The Magistrate Judge cited the plain language of Section 1623(a) and noted that it contains an express preemption clause directing that aliens not lawfully present in the United States could not be eligible for postsecondary education benefits based

6

on state residence unless a United States citizen was also eligible without regard to residency. App. Vol. 1 at 27. The Magistrate Judge also emphasized that, "under the Supremacy Clause, from which our pre-emption doctrine is derived, any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." App. Vol. 1 at 27 (quoting *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992)). The Magistrate Judge thus concluded that Section 1623(a) expressly preempts Okla. Stat. tit. 70 § 3242 and the then-extant OSRHE Policy Section 3.18.6, because both permitted unlawfully present aliens to qualify for in-state tuition and state-funded scholarships or financial aid based on Oklahoma residency, even though out-of-state United States citizens and nationals were not afforded the same benefits. App. Vol. 1 at 25-27.

On August 29, the district court adopted the Report and Recommendation, declaring that the challenged Oklahoma provisions, as applied to aliens who are not lawfully present in the United States, violate the Supremacy Clause and are unconstitutional and invalid. App. Vol. 1 at 29-31. The court ordered a permanent injunction on the enforcement of the unlawful provisions. App. Vol. 1 at 31.

On October 27—59 days later and nearly three months after the United States filed its complaint—OSAT filed a motion to intervene in the district court. App. Vol. 1 at 32. OSAT filed a notice of appeal the next day. App. Vol. 1 at 51. OSAT did not ask the district court to extend its time for filing a notice of appeal before doing

7

so. The United States has since opposed the intervention motion, not on timeliness or other procedural grounds—despite the delays cited above and even though the United States' complaint and Oklahoma's litigation position had both been widely publicized—but instead only on grounds that would equally doom any defense by OSAT of the challenged Oklahoma provisions. In particular, the United States urged that OSAT lacks standing and that the motion for intervention is legally futile because the challenged provisions are preempted as a matter of law.

After this Court docketed OSAT's appeal, Oklahoma moved to dismiss the appeal for lack of jurisdiction based on an argument that OSAT cannot appeal unless and until it becomes a party. ECF No. 11. While that motion was pending, and after this Court noted that OSAT could request an indicative ruling on its intervention motion under Federal Rule of Civil Procedure 62.1 and Federal Rule of Appellate Procedure 12.1, ECF No. 31 at 2, OSAT sought such an indicative ruling on February 23, 12 days later. App. Vol. 1 at 109. Once again, the United States did not oppose the district court's issuing an indicative ruling. Instead, the United States simply stated that the indicative ruling should state that the district court would deny the motion for intervention based on the arguments (standing and legal futility) articulated in the United States' opposition to the intervention motion itself. App. Vol. 1 at 111. As of the filing of this brief, the district court has not yet acted on that motion.

8

As OSAT notes, *see* OSAT Br. at 4 n.3, OSHRE changed its policy following the final judgment in this case. And on May 12, 2026, Oklahoma Governor Kevin Stitt signed Oklahoma Senate Bill 1633, amending the statute at issue in this case, such that individuals without lawful immigration status are no longer eligible under state law for post-secondary education benefits on the basis of residence, including resident tuition. 2025 OK S.B. 1633, Oklahoma Second Regular Session of the Sixtieth Legislature, *available at* https://www.oklegislature.gov/cf_pdf/2025-26%20ENR/SB/SB1633%20ENR.PDF.[2]

## SUMMARY OF ARGUMENT

I.     This Court lacks jurisdiction over this appeal because OSAT was not and has not been made a party in the district court. In addition, the district court cannot issue a decision on the pending intervention motion because OSAT's notice of appeal divested the district court of jurisdiction to decide that motion. And Oklahoma has also repealed the statute at issue in this case, suggesting that the case may be moot. Accordingly, this Court should either dismiss this appeal, hold the appeal in abeyance, or remand the appeal so that the district court can decide the

---

[2] Counsel for the United States subsequently corresponded with counsel for OSAT via email, and the United States understands OSAT to no longer seek prospective relief. But counsel for OSAT stated that the appeal is not moot in OSAT's view because out-of-state tuition rates were imposed on OSAT's members for a period before the repeal and that refunds would thus be due if the consent decree was improperly entered.

intervention motion. OSAT has stated that it does not object to either of the latter two steps.

II.    Should the Court reach the merits, the district court's consent judgment should be affirmed.

A.    Okla. Stat. tit. 70, § 3242 and OSHRE Policy Section 3.18.6 are preempted. Those provisions do precisely what federal law expressly prohibits, providing a post-secondary education benefit (in-state tuition) to aliens who are not lawfully present if they establish residence in Oklahoma, while denying this same benefit to nonresident U.S. citizens and nationals. The plain language of Section 1623(a) expressly preempts these provisions, as confirmed by legislative history, which is directly on point.

B.    OSAT's counterarguments lack merit.

1.    OSAT's sole statutory argument is that the challenged Oklahoma provisions do not provide in-state tuition "on the basis of residence within" Oklahoma. They obviously do. The Oklahoma statute "allows a student to be eligible for resident tuition," Okla. Stat. tit. 70, § 3242.A, and to be eligible a student must have "*[r]esided* in this state with a parent or legal guardian while attending classes at a public or private high school in this state for at least two (2) years prior to graduation," *id.* § 3242(A)(2) (emphasis added). OSAT does not suggest otherwise, but instead observes that there are additional requirements beyond residence.

10

OSAT's apparent view that the imposition of additional requirements, no matter how trivial—in this statute, for example, a requirement that the alien apply for legalization of status if and when they are able and that all students have a high school diploma and otherwise meet the academic requirements of the relevant institution—has no textual basis and would deprive Section 1623(a) of virtually all (likely *literally* all) practical effect.

2.  Section 1623(a) does not violate the Tenth Amendment. Pursuant to its broad powers over immigration and foreign affairs, Congress may direct that aliens who are not lawfully present in the United States are ineligible for benefits based on their (unlawful) residence within a State. And Section 1623(a) does not have any other constitutionally problematic features. It does not commandeer state functions, *see Printz v. United States*, 521 U.S. 898 (1997), and does not issue any commands to state legislatures or any other organ of state government, *see Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018). It just preempts conflicting state law. Indeed, OSAT acknowledges that a *more* categorical law—simply prescribing that unlawfully present aliens are ineligible for in-state tuition on the basis of residence within the state—would present no constitutional problems. Congress certainly did not violate the Tenth Amendment by taking the lesser step of making unlawfully present aliens ineligible for such benefits on the basis of

11

residence within a state only insofar as non-resident United States and citizens are denied those same benefits.

3.      There is no basis for OSAT's contention that the district court could "sever" the statute such that unlawfully present aliens who graduate from an Oklahoma high school would remain eligible for in-state tuition. Doing so would provide in-state tuition for a group of students—aliens who graduated from an Oklahoma high school but did not reside in Oklahoma for two years—to whom the Oklahoma legislature has deliberately declined to afford such treatment. Nothing in Section 1623(a), which was designed to reduce the availability of benefits to unlawfully present aliens, warrants that result. In any event, such a gambit would not resolve the constitutional problem, because graduation from a state high school is itself a residence-based classification—indeed, it is almost a perfect proxy for residence.

C.      OSAT's arguments relating to the procedures in district court before OSAT sought to intervene, in addition to being meritless, on their own terms provide no basis for disturbing the final judgment. The district court properly concluded that Oklahoma's law was preempted, and if this Court agrees after full briefing from OSAT, there would be no valid reason to direct Oklahoma to continue applying an unconstitutional law. But in any event, OSAT provides no authority for the proposition that a court must issue notice to nonparties before entering a consent

judgment, let alone for the proposition that the First Amendment requires a district court to hold a "public hearing" to hear arguments from non-parties before approving one—particularly in a case like this one where the issues are purely legal.

## STANDARD OF REVIEW

This Court reviews legal issues, including interpretation and constitutionality of a state statute, de novo. *Camfield v. City of Oklahoma City*, 248 F.3d 1214, 1221 (10th Cir. 2001); *Central Kansas Credit Union v. Mutual Guaranty Corp.*, 102 F.3d 1097, 1104 (10th Cir. 1996).

## ARGUMENT

**I.      This Court lacks jurisdiction to decide this appeal.**

As OSAT acknowledges, it is not a party to this case and never has been a party. *See* OSAT Br. 1. The Federal Rules of Appellate Procedure, however, instruct that only a party to the underlying judgment may appeal. *See* Fed. R. App. P. 3(c)(1)(A) (the notice of appeal must "specify the party or parties taking the appeal"). The Supreme Court has repeated this limitation. *See Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled."). And this Court has applied that rule in this specific context. *See Southern Utah Wilderness Alliance v. Kempthorne*, 525 F.3d 966, 968 (10th Cir. 2008) ("Movants, non-parties in the district court, suggest their first appeal from the district court's

13

judgment is viable even though the district court had yet to rule on their motion to intervene at the time they filed their notice of appeal. We think not."). Thus, although OSAT could appeal a denial of intervention in the event intervention is denied, it plainly cannot appeal the judgment itself at this point.

OSAT's opening brief does not squarely address these jurisdictional problems—though it appears to acknowledge that it must be granted intervention before it can litigate this appeal. OSAT Br. 2 (stating that "once OSAT is granted intervenor status, either by this Court or the district court, OSAT will be a proper party to this appeal"). As we have explained in opposing OSAT's motion to intervene in this Court, OSAT is the only entity that has appealed, and OSAT's motion to intervene in its own appeal would not address the jurisdictional defect in that appeal. Accordingly, at this time, OSAT's appeal is improper, and it would require a grant of intervention in district court—or a successful appeal of a denial of intervention—to bring the merits of the final judgment before this Court.[3]

---

[3] OSAT has previously, *see* ECF No. 41 at 7, pointed to the Supreme Court's decision in *Devlin v. Scardelletti*, 536 U.S. 1, 14 (2002), for the proposition that it may nonetheless appeal the district court's judgment. There, the Supreme Court held that a non-named member of a class who timely objects at a fairness hearing to the approval of a settlement may bring an appeal without first intervening. But the premise of that decision was that unnamed class members in a class-action suit are *already parties* to the action, *see id.* at 10, which is not true here. OSAT also points to language in this Court's decision in *Southern Utah Wilderness Alliance* stating that there are limited circumstances that warrant "allowing 'nonparties' in the district court to appeal a district court judgment." 525 F.3d at 969 (quotation marks omitted).

*Continued on next page.*

As we also previously explained, the district court likely lacks jurisdiction to act on the intervention motion because of the pendency of this appeal. *See Doe v. Public Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) ("[A]n effective notice of appeal deprives a district court of authority to entertain a motion to intervene after the court of appeals has assumed jurisdiction over the underlying matter."); *Taylor v. KeyCorp*, 680 F.3d 609, 617 (6th Cir. 2012) (same); *Drywall Tapers & Pointers of Greater New York, Local Union 1974 v. Nastasi & Assocs. Inc.*, 488 F.3d 88, 94–95 (2d Cir. 2007) (same); *Roe v. Town of Highland*, 909 F.2d 1097, 1100 (7th Cir. 1990) (same); *Nicol v. Gulf Fleet Supply Vessels, Inc.*, 743 F.2d 298, 299 (5th Cir. 1984) (same). *But see Halderman v. Pennhurst State Sch. & Hosp.*, 612 F.2d 131, 134 (3d Cir. 1979) (en banc) (rejecting this view). Although OSAT could have avoided this situation by filing its intervention motion fewer than 59 days after the district court's judgment, or by asking the district court to extend the time for filing a notice of

---

The Court in that case referenced this Court's decision in *Plain v. Murphy Family Farms*, 296 F.3d 975 (10th Cir. 2002) as the prototypical example of this supposed narrow exception. In that case, the plaintiff brought a wrongful death action on behalf of her deceased husband's estate, the district court distributed the damages between the plaintiff and the decedent's children, and the children—after unsuccessfully attempting to intervene on multiple occasions—appealed. This Court held that it had jurisdiction to review the appeal only insofar as it challenged the apportionment of damages (but not the children's challenge to the district court's denial of their motion for a new trial). *Id.* at 979-81. This Court noted that "[a]s decedent's heirs, the children have a unique interest (*not unlike unnamed members of a class*) under Oklahoma law in the distribution of the wrongful death damage award." *Id.* at 979 (emphasis added). OSAT's relationship to this action is obviously nothing like that of heirs in a challenge to distribution of death benefits.

15

appeal, the United States does not oppose providing OSAT with a procedural mechanism to litigate its right to intervention.

But in addition to the above, Oklahoma has since repealed the relevant portion of the statute that OSAT wishes to defend. Ordinarily, "[s]uits regarding the constitutionality of statutes become moot once the statute is repealed," *McCorvey v. Hill*, 385 F.3d 846, 849 (5th Cir. 2004), at least absent evidence that the defendant plans to reenact the same law or a similar law, something no one claims here. *Federation of Adver. Indus. Executives, Inc. v. City of Chicago*, 326 F.3d 924, 930 (7th Cir. 2003) ("[W]e, along with all the circuits to address the issue, have interpreted Supreme Court precedent to support the rule that repeal of a contested ordinance moots a plaintiff's injunction request, absent evidence that the City plans to or already has reenacted the challenged law or one substantially similar."). Of course, this action was brought by the United States (not OSAT). And since the United States did not cause the case to become moot on appeal, there would be no basis for vacating the judgment below. *Staley v. Harris County, Texas*, 485 F.3d 305, 311 n.2 (5th Cir. 2007) (collecting cases and noting that, "in cases mooted by the voluntary actions or inactions of a party, we have decided the vacatur question in favor of the party that did not cause the case to become moot").

We understand that OSAT no longer challenges the consent decree, which prohibits Oklahoma from applying its law that previously authorizes in-state tuition,

16

on a prospective basis. But OSAT has suggested that the case nonetheless may not be moot because of the possibility that Oklahoma would, if the consent decree were lifted, provide refunds to students who had already paid out-of-state tuition. Although Oklahoma would be better positioned to address its intentions and any state-law issues that might be implicated, it seems unlikely in light of Oklahoma's litigating position and the recent legislative enactment that the State would agree to provide such retrospective relief. And it is far from clear that any student would be entitled to obtain such a refund through litigation against the State. But in all events, these issues provide yet another barrier to proceeding to the merits of this appeal.

If the Court is disinclined to dispose of the appeal based on the intervening repeal of the statute, there remain two possible options the Court could take. First, the Court could simply hold this case in abeyance until the district court rules on the pending motion for an indicative ruling (potentially with the benefit of additional briefing on mootness) and then, depending on that ruling, remand for further proceedings while retaining jurisdiction. *See* Fed. R. App. P. 12.1(b). The United States recognizes, of course, that this Court has previously stated that it would not delay briefing pending that decision. But the Court could reconsider those statements in light of the considerations set forth here.

Or second, as the Second Circuit did in addressing a similar "appellate Catch-22," *Drywall Tapers*, 488 F.3d at 95, the Court could "remand [OSAT]'s purported

17

appeal from the Consent Injunction to the District Court to enable that Court, with its jurisdiction restored, to adjudicate the merits of [OSAT]'s intervention motion," *id.*; *see also Roe*, 909 F.2d at 1100 ("Although the filing of the notice would deprive the district court of power to act on the motion to intervene, the cause may be remanded for that purpose." (quotation marks omitted)). Consistent with the Second Circuit's analysis, since OSAT filed a timely notice of appeal, "albeit at a time when it was not a party, its status as a party, if intervention is granted, should permit it to renew its appeal." *Drywall Tapers*, 488 F.3d at 95. If the Court does not dismiss the appeal outright, the Court could also allow the district court to decide as part of the remand the mootness question in the first instance.

OSAT has previously stated that it would not object to this Court taking either of these latter two steps. ECF No. 41 at 4. Though the United States defers to the Court, there would seem to be little sense in awaiting the district court's indicative ruling on intervention given that the portion of the statute OSAT wishes to defend has now been repealed. Accordingly, the United States believes that either dismissal of the appeal (if the Court concludes the case is moot), or a simple remand to allow the district court to decide the mootness question and, depending on its analysis of that question, the intervention motion, would be more sensible at this point. If this Court were to remand, the district court might also conclude that, even if the case is not technically moot, in these unusual circumstances there is no basis for allowing

intervention to prolong litigation over a statute that has been repealed, without prejudice to any refund actions that may be brought by students in the future. In any event, given the obstacles discussed above, the United States respectfully submits that the Court cannot consider the merits of OSAT's appeal now.

## II.    If the Court decides this appeal, it should affirm.

### A.    The challenged Oklahoma provisions are preempted.

Section 1623(a) provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit (in no less an amount, duration, and scope) without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). That plain language makes clear that if a state's tuition structure distinguishes between residents or nonresidents for U.S. citizens, aliens who are not lawfully present are ineligible for the resident rate.

Okla. Stat. tit. 70, § 3242 and former OSRHE Policy Section 3.18.6 are thus preempted. The statute allows students to be eligible for reduced resident tuition at an Oklahoma public college or university if the student: (1) graduated from a high school in the state; and (2) resided in the state with a parent or legal guardian while attending an Oklahoma high school for at least two years prior to graduation. *See* Okla. Stat. tit. 70, § 3242(A). The statute also states that students who cannot provide

19

evidence of citizenship or immigration status remain eligible for reduced resident tuition if the student provides: (1) a copy of a true and correct application or petition filed with the USCIS to legalize the student's immigration status; or (2) an affidavit of intent to legalize his or her immigration status within one year of the agency establishing a process for doing so without risk of deportation. *Id.* § 3242(B)(2). The statute thus specifically allows unlawfully present aliens to qualify for reduced in-state tuition based on residence within Oklahoma.

The invalidity of the Oklahoma scheme is apparent from the plain text of Section 1623(a). First, the Oklahoma scheme provides a "postsecondary education benefit" to unlawfully present aliens—OSAT does not contend otherwise. Substantially reduced tuition is obviously a "benefit," in both the dictionary and everyday use of the term. It is an "advantage or privilege something gives." Black's Law Dictionary, Benefit (12th ed. 2024); *see also* Merriam-Webster Online Dictionary, Benefit, https://www.merriam-webster.com/dictionary/benefit ("something that produces good or helpful results or effects or that promotes well-being"). Dictionaries from around the time of IIRIRA's enactment provide similar definitions. *See, e.g.*, Benefit, Meriam-Webster's Collegiate Dictionary 106 (10th ed. 1997) (defining the term as, inter alia, "ADVANTAGE" and "useful aid"). And it is a "postsecondary education" benefit—i.e., it is a benefit for education after high school.

Although the text is clear and no recourse to legislative history is needed, that history simply could not be clearer that Congress intended for Section 1623 to encompass in-state tuition rates. Indeed, the principal purpose of the provision was to preempt precisely the scheme embodied in Oklahoma law. A House conference committee report, commenting on the language that was ultimately enacted as Section 1623, states that "[t]his section provides that illegal aliens are not eligible for in-state tuition rates at public institutions of higher education." H.R. Rep. No. 104-828, at 240 (1996) (Conf. Rep.).

And that benefit is provided on the basis of residence. That, too, could not be more straightforward. If two aliens are identically situated insofar as they satisfy all the other requirements, except that one of them resided in the state for two years prior to graduation and the other did not, the state statute provides that the alien who resided in the state will pay substantially lower tuition than the alien who did not. Finally, there can be no serious argument (and OSAT does not argue) that "a citizen or national of the United States is eligible for" in-state tuition "without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a). That should be the end of the matter.[4]

---

[4] A district court in Minnesota has since held that unlawfully present aliens are eligible for in-state tuition on the basis of residence provided that a *single* citizen or national of the United States who is not a resident of the State is also eligible. *United States v Walz*, --- F. Supp. 3d ----, 2026 WL 851231, at *10 (D. Minn. Mar. 27,

*Continued on next page.*

21

## B.    Appellants' contrary arguments lack merit.

OSAT argues that (1) the Oklahoma scheme does not provide benefits "on the basis of residence"; (2) interpreting Section 1623(a) to preempt the challenged Oklahoma provisions would render Section 1623(a) unconstitutional; and (3) the district court should have "severed" the Oklahoma statute to eliminate the express two-year residence requirement. None of these arguments has merit.

### 1.    The challenged provisions provide benefits "on the basis of residence" within Oklahoma.

OSAT's sole argument that Section 1623(a)'s express preemption clause does not apply here is that the Oklahoma scheme supposedly does not provide in-state tuition "on the basis of residence." OSAT Br. 18-22. But the state statute "allows a student to be eligible for *resident tuition*." Okla. Stat. tit. 70, § 3242(A) (emphasis added). And it requires a student (in addition to graduating from an Oklahoma high school, itself a nearly perfect proxy for residence), to have "*[r]esided* in this state

---

2026). OSAT does not advance that contention here and this conclusion—which the United States is appealing—is both contrary to Section 1623(a)'s text and nonsensical. Section 1623(a) says that "*an* alien . . . shall not be eligible on the basis of residence within a State" for a postsecondary education benefit unless "*a* citizen or national of the United States is eligible for such a benefit *(in no less an amount, duration, and scope)* without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623(a) (emphases added). The meaning of that parallel structure is straightforward. Congress meant to prevent aliens who are not lawfully present from receiving better treatment than nonresident citizens or nationals who are similarly situated. It does not mean that Section 1623(a) is entirely defeated by the presence of any nonresident U.S. citizen who receives the relevant benefit, regardless of the circumstances.

with a parent or legal guardian while attending classes at a public or private high school in this state for at least two (2) years prior to graduation," *id.* § 3242(A)(2) (emphasis added).

How then can OSAT possibly contend that the statute does not provide benefits "on the basis of residence"? According to OSAT, "on the basis of residence" means based "solely on residence." OSAT Br. 19. And after inserting "solely" into Section 1623(a)—a word the statute does not contain—OSAT reasons that a state statute does not provide benefits on the basis of residence if the state imposes *any* additional requirements. Here, for example, OSAT maintains that the mere fact that the statute also requires unlawfully present aliens (like all students) to have a high school diploma means the benefit is not provided on the basis of residence.

This is a remarkable assertion, and one without any textual basis. "[O]n the basis of"—or "based on"—simply means using a fact or object as the foundation of something. A movie may be "based on a novel" or "based on a true story" even if, as is almost always the case, there are aspects of the movie that were not contained in the novel or did not actually happen in real life. An author can say that an article is "based on my research over the last year," even if parts of the article involve information the author knew before the author started the relevant research. The same is true in the law. *See Murray v. UBS Sec., LLC*, 601 U.S. 23, 36-37 (2024) (noting Congress's judgment that "personnel actions against employees should quite

23

simply not be based on protected whistleblowing activities—not even a little bit" (alteration and quotation marks omitted)); *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1197 (9th Cir. 2019) ("Nor does the instruction's use of 'based on' foreclose the possibility that an impermissible factor or consideration contributed to the decision to discipline Frost.").

Indeed, "on the basis of" simply means "because of." *See generally Bostock v. Clayton County*, 590 U.S. 644 (2020) (using terms interchangeably). The precise link that is necessary may be context-specific. Title VII—which bars certain types of discrimination "because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)—prohibits "making a protected characteristic a 'motivating factor' in an employment decision," *EEOC. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015). For whistleblower claims under the Sarbanes–Oxley Act, the plaintiff 's burden on intent is simply to show that the protected activity was a "contributing factor in the unfavorable personnel action." 49 U.S.C. § 42121(b)(2)(B)(i). But "on the basis of" does not normally—let alone inevitably—mean that a given fact is the *sole* reason for what follows. *See, e.g., Bostock*, 590 U.S. at 671 ("Nor does the statute care if other factors besides sex contribute to an employer's discharge decision."). And OSAT's invocation of the canon of *expressio unius*, OSAT Br. 20-22, adds nothing; it essentially just restates OSAT's erroneous contention that "based on" means "solely based on," such that a

24

benefit is not provided on the basis of a characteristic unless it is provided to literally everyone with that characteristic without any other requirements.

The context here underscores that Congress did not mean to suggest that residence would need to be the sole requirement for obtaining a particular postsecondary education benefit. Virtually no benefit is provided *solely* on the basis of residence. Rather, residence is one of several qualifications. To take just one of many potential examples, if a state were to require that students who wish to pay in-state tuition must certify that they will comply with the laws of the state and the rules of the academic institution while in attendance, it would be nonsensical to suggest that the benefit is no longer provided on the basis of residence. And more generally, given that the federal statute is a prohibition on states designed to further the national government's immigration policy, Congress plainly did not mean to authorize states to evade it by adding additional requirements, no matter how trivial, to their residence-based classifications.

The particular additional requirements to which OSAT points highlight that the federal statute applies. On OSAT's view, Oklahoma does not provide in-state tuition on the basis of residence because it *also* requires graduation from an Oklahoma high school. OSAT Br. 19-20. But that requirement does not add much, as the universe of state residents who are eligible to go to college will not be materially different from the universe of students who graduated from a state high

25

school. And the idea that the operation of the federal statute would be altered by the additional requirement that unlawful aliens file an application to legalize their immigration status (or state that they will do so in the future), OSAT Br. 20, is likewise implausible. That additional "requirement" does not meaningfully limit the aliens eligible for in-state tuition. And this argument implausibly suggests that OSAT can evade Congress's prohibition by replacing the immigration category that Congress designated (premised on unlawful presence) with the Oklahoma's own preferred classification (unlawful status with no intention to legalize). That argument reverses the ordinary presumption that it is Congress, and not the states, that determines immigration policy.

Nor is there any merit to OSAT's contention that "Congress's long silence in the face of widespread state practice reflects" acquiescence to Oklahoma's statute, OSAT Br. 17—and indeed, given OSAT's view that Section 1623(a) in practice preempts nothing, acquiescence not only in Oklahoma but in *all* state statutes providing such benefits to unlawful aliens. Although the Supreme Court has "recognized congressional acquiescence to administrative interpretations of a statute in some situations, [it] ha[s] done so with extreme care." *Solid Waste Agency of North Cook County v. U.S. Army Corps of Engineers*, 531 U.S. 159, 169 (2001). Congressional acquiescence is inferred only when there is "overwhelming evidence" of such acquiescence, *id.* at 169 n.5, such as "evidence that Congress considered and

26

rejected the 'precise issue' presented before the Court," *Rapanos v. United States*, 547 U.S. 715, 750 (2006) (emphasis omitted). Here of course, OSAT does not point to any subsequent action of Congress at all. Nor does OSAT even identify any authoritative administrative interpretation from the federal government that Section 1623(a) does not preempt laws like Oklahoma's. Instead, OSAT is simply observing that, in the years since Section 1623(a)'s enactment, Oklahoma and numerous other states have passed statutes providing in-state tuition to unlawfully present aliens and that those statutes until recently have not been the subject of legal challenges. That is not evidence of anything—and certainly does not justify ignoring the plain text of Section 1623(a) (as well as directly on point legislative history).

Finally, in addition to being contrary to Section 1623(a)'s plain text (as well as legislative history), OSAT's interpretation is obviously untenable, as it would deprive the statute of virtually all practical effect. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63 (2012) ("The presumption against ineffectiveness ensures that a text's manifest purpose is furthered, not hindered."). Indeed, it would likely result in a federal statute that would do *literally* nothing. On OSAT's apparent view, the only state statute that Section 1623(a) would preempt would be a statute making any resident of the state automatically eligible for in-state tuition, with no further requirements whatsoever— including graduation from high school or satisfaction of the other basic requirements

27

for matriculation at the relevant institution. We are not aware of any state statute that operates this way, now or in 1996, and OSAT does not suggest that any such state statute did or does exist. Indeed, OSAT itself notes that "states have long conditioned benefits, such as tuition rates, on factors such as high school attendance and graduation, academic achievement, and financial need." OSAT Br. 21. Yet on OSAT's view, Section 1623(a) means (to take just one example) that unlawful aliens who reside in a state are eligible for in-state tuition if the state also requires that those unlawful aliens (like all students) have a high school diploma. The political branches do not ordinarily go to the trouble of enacting major legislation that accomplishes literally nothing.

**2.     OSAT's Tenth Amendment argument lacks merit.**

OSAT also asserts that Section 1623(a), if it encompasses Oklahoma's scheme, violates the Tenth Amendment. But Congress plainly has authority to determine the circumstances in which aliens are entitled to benefits. There is nothing constitutionally suspect about Congress—pursuant to its broad powers over immigration and foreign affairs—directing that aliens who are not lawfully present in the United States are ineligible for benefits based on their (unlawful) residence within a state if those benefits are denied to United States citizens. *See Plyler v. Doe*, 457 U.S. 202, 225 (1982) ("Although it is a routine and normally legitimate part of the business of the Federal Government to classify on the basis of alien status, and

28

to take into account the character of the relationship between the alien and this country, only rarely are such matters relevant to legislation by a State." (citations and quotation marks omitted)).

Indeed, OSAT acknowledges that "Congress has the power to regulate on matters of immigration," OSAT Br. 27, and that Congress would have been "within its authority to completely foreclose benefits to students without lawful immigration status." OSAT Br. 28. OSAT acknowledges, in particular, that "there would be no Tenth Amendment concern if Section 1623(a) ended before 'unless,'" *id.*—i.e., if the statute simply directed that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State . . . for any postsecondary education benefit." What makes Section 1623(a) constitutionally infirm, according to OSAT, is that Congress specified that illegal aliens are ineligible for such benefits on the basis of residence *only insofar as* United States citizens and nationals who are not residents of the state are ineligible.

This argument is illogical—and if anything, backwards. If Congress can enact a statute categorically making aliens ineligible for the benefits at issue here (as OSAT concedes it could), it can obviously pass a statute that gives states *additional* policy flexibility. *Cf. Hodel v. Virginia Surface Mining and Reclamation Association, Inc.*, 452 U.S. 264, 290 (1981) (where "Congress could constitutionally have enacted a statute prohibiting any state regulation of surface coal mining," "[w]e

29

fail to see why the Surface Mining Act should become constitutionally suspect simply because Congress chose to allow the States a regulatory role"). In addition, the entire concept of in-state tuition makes sense only in states that distinguish between state residents and out-of-state students (as all or virtually all states do). The point of the federal law is that, to the extent that states draw such distinctions, aliens who are not lawfully in the United States are ineligible for the in-state treatment. That is a reasonable line to draw, and less artificial than OSAT's proposal of prohibiting distinctions among aliens based on in-state residence without regard to a state's ordinary rules for setting tuition based on residence.

In theory, Oklahoma could respond to Section 1623(a) by eliminating any distinction between in-state and out-of-state students who are U.S. citizens or nationals. But that would be a surpassingly odd response to the federal enactment and OSAT cannot seriously suggest that Congress is somehow coercing Oklahoma to take that step—indeed, Congress obviously did not *anticipate* that states would take that step (as OSAT notes). Accordingly, there is no plausible constitutional defect in Section 1623(a), particularly in light of OSAT's concession that Congress can legislate in this area as a general matter.

OSAT's Tenth Amendment challenge to Section 1623(a) consists of three variations on this erroneous theme. OSAT urges that the federal statute (a) tells states how to legislate, OSAT Br. 27-31; (b) coerces Oklahoma to expand education

30

benefits to all U.S. citizens, OSAT Br. 31-33; and (c) undermines political accountability and federalism, OSAT Br. 33-35. None of these contentions has merit.

**a.** OSAT invokes the Supreme Court's decision in *Murphy v. National Collegiate Athletic Association*, 584 U.S. 453 (2018), for the proposition that Congress may not tell a state what it "'may and may not do,'" OSAT Br. 29 (quoting *Murphy*, 584 U.S. at 474), and asserts that Section 1623(a) is structured "'as if federal officers were installed in state legislative chambers and were armed with the authority to stop legislators from voting on any offending proposals.'" *Id.* (quoting *Murphy*, 584 U.S. at 474). But the point of *Murphy* was that Congress could not force a state *to legislate*. Specifically, by providing that a state could not "authorize by law or compact . . . a lottery, sweepstakes, or other betting, gambling, or wagering scheme based . . . on" competitive sporting events, 28 U.S.C. § 3702(1), Congress purported to require states to make certain conduct illegal under state law, 584 U.S. at 474-75; *see also id.* at 475 (characterizing law as "command[ing] state legislatures to enact or refrain from enacting state law"). The Court made clear, however, that Congress could preempt state law by providing or eliminating a right or obligation held by private citizens that the state would otherwise have afforded or withheld. Section 1623(a) is thus a textbook case of what the Supreme Court described as an ordinary, valid preemption law: "Congress enacts a law that imposes restrictions or

31

confers rights on private actors" (here, restrictions on the receipt of certain benefits);

"a state law confers rights or imposes restrictions that conflict with the federal law"

(here, a right to in-state tuition); "and therefore the federal law takes precedence and

the state law is preempted." *Id.* at 477.

And the more basic point is that Section 1623(a) is *self-executing*. It makes

unlawful aliens ineligible for benefits under the circumstances where it applies, and

it preempts contrary state laws—*without requiring* any intervening steps by states or

their legislatures.

OSAT insists that Section 1623(a) amounts to a direct command to the

Oklahoma state legislature because "states that want to provide educational benefits

to undocumented students based on their residency within the state, must change

their laws to also provide those same benefits to all United States citizens or

nationals." OSAT Br. 29. But that does not amount to a command to legislate or

refrain from legislating; it just restates the terms of a preemption provision based on

what a state would need to do to avoid it. Indeed, this theory has no logical limit. By

definition, the dynamic OSAT describes is always present when a federal statute

preempts some state schemes but not others—whenever an express preemption

clause preempts certain state laws, states know that they can enact a different and

otherwise constitutional statute that does not fall within the scope of the preemption

provision. But this common feature is simply not tantamount to the challenged law

32

in *Murphy*—which, as just noted, purported to command state legislatures.[5]

**b.** OSAT's argument fares no better when characterized as coercion rather than as a command. OSAT invokes *National Federation of Independent Business v. Sebelius* (*NFIB*), 567 U.S. 519 (2012) for the proposition that Section 1623(a) "'indirectly coerces'" states "into adopting a federal regulatory system." OSAT Br. 29 (quoting 567 U.S. at 578); *see also* OSAT Br. 27 (contending that "Section 1623(a) improperly instructs and coerces state legislation"); OSAT Br. 30 ("Section 1623(a) functions as a coercive tool for Congress to bring state policy into alignment with federal preferences."). But the Supreme Court's holding in *NFIB* was premised on its view that Congress attempted to coerce a state through a funding condition into doing something Congress could not compel directly. The statute "dramatically increase[d] state obligations under Medicaid" even though "the Federal Government may not compel the States to enact or administer a federal regulatory program," 567

---

[5] Indeed, the Supreme Court held in *Hodel* that it was constitutionally permissible for Congress to prescribe a scheme under which a state could either assume regulatory authority over surface coal mining operations by submitting a proposed regulatory program meeting federal requirements for federal approval *or* accept exclusive federal regulation of such operations. 452 U.S. at 290. As noted, here Congress did not provide for or even anticipate states changing their statutes in response to Section 1623(a), which operates simply by preempting inconsistent state law. But in any event, the basic point is the same: if Congress has the authority to provide a particular federal rule without qualification (here, ineligibility of unlawfully present aliens for postsecondary education benefits), it may take the more modest step of prescribing a rule of ineligibility but providing states a legislative path to restore their eligibility.

U.S. at 575 (quotation marks omitted) (plurality opinion), and it did so to "coerc[e] the States" into expanding Medicaid coverage by threatening to withhold federal money. *Id.* And "[t]he threatened loss of over 10 percent of a State's overall budget" was "economic dragooning that leaves the States with no real option but to acquiesce in the Medicaid expansion." *Id.* at 582.

Nothing of the kind is happening here. For starters, the necessary premise of *NFIB*—that Congress was trying to coerce an outcome it could not achieve directly—obviously does not apply here because OSAT concedes that a broader and more categorical statute would be within Congress's authority. In any event, Congress did not place conditions on any funding to states or otherwise threaten any consequences to the state based on a state's policy choices. It merely precluded certain individuals from receiving certain categories of benefits. *NFIB* was the rare case in which the size of the potential penalty for a state—loss of a sizable portion of the state's budget—meant that a provision that Congress described as a choice was actually a command to legislate in a particular fashion. Here, there is no penalty at all. And as noted above, a state need not enact any legislation. This is just a preemption provision. Congress plainly was not trying to coerce states into abandoning the distinction between in-state and out-of-state tuition (again, Congress almost certainly did not *expect* states to respond to the legislation by doing so). Congress instead was merely setting rules for unlawfully present aliens, which

34

OSAT concedes is within Congress's authority.

The error in OSAT's assertion that Congress is leaving States "with no real option but to" expand in-state tuition to all U.S. citizens and nationals is all the more evident because Oklahoma in fact *has not done this* (nor, apparently, has any other state). The actual effect of Section 1623(a) is thus exactly the effect of the statute that OSAT concedes is permissible: unlawfully present aliens receive no benefit from in-state tuition based on residence and the rules for U.S. citizens and nationals remain unchanged.

**c.** The error in OSAT's theories of commandeering and coercion also dooms OSAT's assertion that Section 1623(a) undermines political accountability because "[c]itizens can no longer tell whether their state officials or Congress are to blame for unpopular policies." OSAT Br. 34. Oklahoma is free to attribute the absence of in-state tuition for unlawfully present aliens to the federal government—and when a federal court enjoins application of Oklahoma's law to unlawfully present aliens based on federal law, there is no uncertainty about whose laws are causing that result. In the unlikely event that Oklahoma elects to respond to Section 1623(a) by eliminating any distinction between the tuition charged to in-state and out-of-state students who are U.S. citizens or nationals, that choice cannot plausibly be attributed to the federal government.

35

Finally, OSAT does not advance its argument by briefly alluding to the constitutional-avoidance doctrine. OSAT Br. 9. Constitutional avoidance "is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Clark v. Martinez*, 543 U.S. 371, 381 (2005). That doctrine is not applicable here because OSAT does not propose an interpretation that cures the supposed constitutional problems it purports to identify; OSAT's interpretation "avoids" the issue only by depriving the federal statute of any effect (by limiting it to a hypothetical set of state statutes that do not and never have existed). In any event, for the reasons discussed in this brief, OSAT's construction of Section 1623(a) is not plausible, and its constitutional arguments are insubstantial. And "a weak constitutional argument and a weak statutory argument do not add up to a strong constitutional avoidance argument." *United States v. Blewett*, 746 F.3d 647, 660 (6th Cir. 2013) (en banc), *superseded by statute on other grounds as stated in United States v. Richardson*, 960 F.3d 761, 763 (6th Cir. 2020) (per curiam).

### 3.    OSAT's "severability" argument lacks merit.

OSAT also contends that the district court should have considered severing an injunction to apply only to Okla. Stat. tit. 70, § 3242(A)(2) (which expressly requires residence within Oklahoma for at least two years prior to Oklahoma high

school graduation) but not to Section 3242(A)(1) (which requires graduation from an Oklahoma high school). OSAT Br. 36.

This argument fundamentally misunderstands both severability doctrine and the facts and circumstances of this case. Severability doctrine comes into play only if there is some impermissible provision of law, and the question is whether other provisions can be permissibly applied. Here, Oklahoma law provides that certain aliens are entitled to pay lower tuition rates because they reside in Oklahoma and satisfy certain other requirements. But federal law provides that aliens cannot obtain eligibility for lower tuition rates on this basis. Accordingly, an alien who seeks to pay only the lower, in-state tuition rate is precluded by federal law from doing so.

OSAT's so-called "severability" argument relates not to this scenario but to one in which the federal statute has no effect at all. OSAT hypothesizes an alien who does not satisfy the residency requirement but did graduate from an Oklahoma high school. Such an individual would not have been eligible for in-state tuition under state law, and Section 1623(a) would have had no effect on that person. There is no basis for OSAT's assertion that anything about this litigation means that in-state tuition should for some reason be available to that person. The United States did not seek that relief in this lawsuit; among other things, it plainly would neither vindicate Congress's intention of reducing the degree to which unlawfully present aliens receive benefits.

Put another way, it is not the residence requirement that is preempted by federal law, but rather the provision of in-state tuition to certain unlawfully present aliens. The idea that Section 1623(a) operates to make *more* unlawfully present aliens eligible for in-state tuition is self-evidently wrong.

In addition, although the Court would not need to reach the issue, granting in-state tuition based solely on graduation from an Oklahoma high school is also providing benefits "on the basis of residence within" Oklahoma, and therefore OSAT's preferred version of the statute would also be preempted. Graduation from high school within a state for purposes of in-state college tuition is plainly a proxy for residence. Indeed, it is almost a *perfect* proxy for residence. Virtually every graduate of an Oklahoma high school resides in Oklahoma; indeed, like many other states, Oklahoma only provides free public school tuition to those who reside in the State. Okla. Stat. tit. 70, § 1-113(B). Even in the (likely quite anomalous) case where an individual graduates from an Oklahoma high school, subsequently moves out of state, and then applies to college in Oklahoma with an out-of-state residence, that individual is still being permitted to pay lower in-state tuition based on his/her prior residence in the State. Nothing in Section 1623(a) requires in-state tuition to be provided based on an alien's current residence (or residence at any particular point in time).

More broadly, the purpose of the federal statute is to prevent states from providing in-state tuition to illegal aliens, regardless of the precise basis on which in-state status is assessed. It is hard to imagine that the Congress that enacted the provision, which operates as a restriction on states, would have wanted to allow it to be evaded by the adoption of a classification that is almost perfectly correlated with residence and is intended to serve the exact same purposes as an express residence classification.

The United States recognizes that the California Supreme Court and a district court in Minnesota have held otherwise (though the latter decision is on appeal). *See Martinez v. Regents of Univ. of California*, 241 P.3d 855 (Cal. 2010); *United States v. Walz*, --- F. Supp. 3d ----, 2026 WL 851231 (D. Minn. Mar. 27, 2026). Those decisions are incorrect. But in any event, as noted, the validity of the Oklahoma statute can be resolved on the ground that the statute expressly depends on residence, such that this Court need not reach the issue.

C.    **The district court did not violate the First Amendment or due process principles in entering the judgment.**

Finally, apart from the merits, OSAT argues that the district court violated the rights of its members by entering the judgment "without holding a public hearing to allow affected third parties to present argument and seek relief from the harms that would be caused by the potential invalidation of the challenged provisions." OSAT Br. 11. In addition to being mistaken on the merits, this argument provides no basis

39

for allowing a preempted statute to remain in force. At most, OSAT would be entitled to present argument and seek relief, and (assuming the jurisdictional defects with its appeal are resolved) OSAT is receiving the opportunity to do so in this Court. Thus, any conceivable procedural concern has been resolved, and because the district court properly decided the case on the merits, that should be the end of the matter.

In any event, OSAT acknowledges that its members are not parties to this action. And OSAT does not dispute that whether Section 1623(a) preempts Oklahoma's scheme presents purely legal issues, not factual questions—let alone factual questions particular to OSAT's members. Effectively then, OSAT's contention appears to be that the First Amendment required the district court to schedule oral argument on the motion for a consent judgment and allow non-parties who would assertedly be affected by the judgment to present legal arguments. The only support that OSAT provides for that extraordinary proposition are cases noting that the First Amendment provides a right to petition the courts for redress of grievances. That basic proposition does not extend to a right for anyone potentially affected by a decision to obtain notice and an opportunity to be heard.

OSAT's reliance on due-process principles fares no better. The Supreme Court's decision in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), involved notice requirements to beneficiaries of a common trust fund before

40

judicial settlement of the accounts of that trust fund; no one is disposing of OSAT's property here. Similarly, *Goldberg v. Kelly*, 397 U.S. 254 (1970), involved the need for an evidentiary hearing before a particular individual's welfare benefits were terminated based on individualized determinations of fact. *Id.* at 269 (stating that "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses"). That decision has no evident relevance here. In *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024), the Ninth Circuit addressed the rights of absent members of a class in a mass arbitration, *id.* at 684, which again has little to do with this case. Finally, although this Court has recognized that students have a property interest in their education in certain contexts, OSAT Br. 14, those cases involved actions against a particular student unlike the dispute between Oklahoma and the United States at issue here. *See, e.g.*, *Gossett v. Oklahoma ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1181 (10th Cir. 2001).

In any event, as noted, any concern the Court might have about OSAT's ability to be heard here would be fully addressed by the process that OSAT is receiving now. If this Court, if it were able to consider the merits of this appeal, agrees with the United States that Oklahoma's law is preempted, that is the only thing that matters—and there would plainly be no basis for this Court to enter a judgment directing Oklahoma to resume enforcement of an unconstitutional law.

## CONCLUSION

The appeal should be dismissed or remanded to the district court, or in the alternative the district court's judgment should be affirmed.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Local Rule 28.2(c)(2), the United States indicated on the cover page of this brief that oral argument is requested only in an abundance of caution, because OSAT requested argument and because the United States intends to participate if the Court schedules oral argument. But the United States takes no position on whether oral argument is in fact necessary and defers to the Court on that question.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*

ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
DANIEL TENNY

 */s/ Andrew M. Bernie*
ANDREW M. BERNIE
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7539*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3511*

May 2026

43

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 10,486 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Times New Roman 14-point.

*/s/Andrew M. Bernie*
ANDREW M. BERNIE

## CERTIFICATE OF SERVICE

I certify that on May 27, 2026, a true and correct copy of this Brief was filed with the Clerk for the United States Court of Appeals for the Fifth Circuit via the Court's electronic filing system, which will forward a copy to all counsel of record.

*/s/ Andrew M. Bernie*
ANDREW M. BERNIE